MANUEL DEL RÍO TÓRRES, ISIDORA DEL RÍO GONZÁLEZ asistida de su esposo PABLO REYES, MARÍA-FRANCISCA o JUANA-FRANCISCA y MARÍA GRACIA DEL RÍO GONZÁLEZ, asistida ésta de su esposo JULIO SURO, demandantes y apelantes, v. SUCESIÓN de RAFAEL A. CANCEL y THE NATIONAL SURETY COMPANY, demandadas y apeladas.

No. 3707.—*Visto:* Noviembre 27, 1926. *Resuelto:* Marzo 29, 1927.

1. NOTARIOS—RESPONSABILIDAD POR NEGLIGENCIA EN EL CUMPLIMIENTO DE SUS DEBERES—RESPONSABILIDAD DE LA SUCESIÓN POR LAS OMISIONES NEGLIGENTES DE AQUÉL.—Fallecido un notario, su sucesión es responsable de los perjuicios causados por la omisión negligente de cumplir aquél un deber legal,

sin que les exima de esa responsabilidad el hecho de no haber probado los demandantes que sus herederos aceptaron la herencia ni que hubieran heredado bienes de su causante.

2. NOTARIOS—RESPONSABILIDAD SOBRE FIANZAS NOTARIALES—PERSONAS CON ACCIÓN CONTRA DICHAS FIANZAS.—El perjudicado por los actos u omisiones de un notario en el cumplimiento de sus deberes como tal tiene acción contra la fianza notarial para resarcirse de los perjuicios sufridos, sin que el que aquella esté constituida a favor de El Pueblo de Puerto Rico y para pagarle a él sea obstáculo para que la acción pueda dirigirse contra dicha fianza.

SENTENCIA de *Enrique Lloreda,* J. (Arecibo), declarando sin lugar demanda de daños y perjuicios, con costas, excluyendo honorarios. *Revocada,* dictándose otra por la que se declara con lugar la demanda, sin costas.

.V. *Polanco de Jesús,* abogado de los apelantes; *Besosa & Besosa,* abogados de los apelados.

EL JUEZ ASOCIADO SEÑOR ALDREY, emitió la opinión del tribunal. .

Los apelantes, que son los demandantes en la corte inferior, como herederos de don Manuel del Río Balbín convinieron con don Rafael A. Cancel en que como notario público se ocupara de hacer el trabajo de inventario, liquidación, partición y adjudicación de los bienes dejados por el padre de los demandantes, reduciendo a escritura pública dicho trabajo y corriendo por su cuenta los gastos de inscripción en los registros de la propiedad correspondientes, estipulándose como precio de dicho trabajo la cantidad de $2,000. El notario hizo la escritura de partición y de adjudicación de bienes que fué firmada por los herederos el 10 de abril de 1922 teniendo el No. 33 de su protocolo pero el notario nunca puso su firma, signo, rúbrica y sello en esa escritura, no obstante lo cual hizo constar en la copia certificada que el mismo día libró de esa escritura que estaba firmada y signada por él y con su sello, con cuya copia fueron inscritas en el registro de la propiedad las adjudicaciones hechas a los herederos. El notario murió el 3 de octubre del mismo año y habiendo tenido noticia poco tiempo después los herederos mencionados de que la escritura ori-

ginal de partición no estaba firmada, signada y sellada por el notario Cancel acudieron ante otro notario quien les otorgó otra escritura de partición y adjudicación de los expresados bienes.

Después de esos hechos dichos herederos presentaron demanda contra la Sucesión del notario Cancel compuesta por su viuda y por cinco hijos menores de edad y contra The National Surety Co., corporación del Estado de Nueva York, fiadora del notario Cancel por el ejercicio de su cargo y cuya fianza estaba en vigor cuando fué otorgada esa escritura, cuando el notario murió y cuando fué presentada la demanda, reclamándoles que mancomunada y solidariamente les paguen la cantidad de $650.50 por los perjuicios que han tenido por la omisión del notario Cancel de firmar, signar y rubricar la escritura de abril de 1922. Se opusieron ambos demandados a esa reclamación y se celebró el juicio en el que sólo presentaron prueba los demandantes, por haber manifestado los demandados que no tenían evidencia que presentar, recayendo sentencia que declaró sin lugar la demanda con las costas.

Dispone la ley notarial en sus secciones 9 y 20 (Compilación 1911, secciones 1987 y 1998) que la escritura original que redacta el notario y que firman los otorgantes y testigos deberá ser autorizada por el notario ante quien se otorgue con su firma, signo y sello y declara nulos los instrumentos públicos que no cumplan con ese requisito, por lo que por mandato expreso de la ley es nula la escritura que los demandantes otorgaron el 10 de abril de 1922 con el No. 33 ante el notario Rafael A. Cancel por carecer de la firma, signo y rúbrica de dicho notario; y como un documento nulo no puede producir efectos válidos, nulas son las inscripciones que en virtud de esa escritura fueron hechas en el registro de la propiedad con copia certificada de una escritura aparentemente válida, y así lo hemos resuelto en el caso de *Fragoso* v. *Marxuach,* 31 D.P.R. 195. Por

consiguiente, siendo nula la escritura original de la partición y nulas las inscripciones de las adjudicaciones hechas en la misma, los demandantes no tenían un título válido de ellas y para obtenerlo les era necesario otorgar otra escritura que fuera válida, como lo hicieron en primero de noviembre del mismo año, cuyos gastos y el de las nuevas inscripciones que se hagan son perjuicios sufridos por los demandantes por la omisión del notario Cancel de cumplir con el deber que le impone la ley de firmar, signar y rubricar las escrituras originales que se otorgaban ante él.

[1] ¿Son responsables los demandados de los perjuicios que se les reclaman?

Examinaremos esa cuestión en primer término en cuanto a la sucesión del notario Cancel.

Dispone el artículo 1803 del Código Civil que el que por acción u omisión causa daño a otro, interviniendo culpa o negligencia, está obligado a reparar el daño causado, por lo que no puede haber duda de que el notario Cancel sería responsable de acuerdo con ese precepto de los perjuicios que su omisión negligente en firmar dicha escritura hubiera causado a los otorgantes de ella; responsabilidad que se transmite a su sucesión porque el hombre nunca muere en cuanto a sus derechos y obligaciones civiles que no sean personalísimos sino que se transmiten a sus herederos, según declara el artículo 664 c del Código Civil, por lo que la sucesión del notario Cancel es responsable de la obligación civil que su causante tenía de indemnizar a los demandantes por los perjuicios causados por su omisión negligente de cumplir un deber legal; sin que estén exentos de esa responsabilidad por no haberse probado que hayan aceptado la herencia ni que hayan heredado bienes de su causante, pues como se dijo en el caso de *Amy* v. *Aponte,* 29 D.P.R. 145, al demandante sólo incumbe alegar la condición de heredero de los demandados porque a partir del fallecimiento del causante la substitución de éste por heredero o causa-

habiente es simultánea, sin que sea necesaria la aceptación porque ésta se presupone siempre como consecuencia de la sucesión, siendo la no aceptación de la herencia una excepción que corresponde alegar a los demandados. Así, pues, la sucesión del notario Cancel es responsable de la reclamación que se le hace.

[2] Examinemos la cuestión en cuanto a la otra demandada. The National Surety Co.

Ordena la Ley Notarial en su sección 2ª como quedó enmendada por la Ley No. 15 de 1914, página 151 de las de ese año, que toda persona admitida al ejercicio de la profesión notarial deberá prestar y conservar en toda su fuerza y vigor, mientras estuviere dedicado al ejercicio de esa profesión, una fianza a favor del Pueblo de Puerto Rico por la suma de $2,500 dólares para responder del buen desempeño del cargo: que esa fianza responderá de los daños y perjuicios que por acción u omisión cause el notario en el ejercicio de su ministerio y que si en una reclamación judicial que se haga contra un notario, se le adjudica al reclamante el todo o parte de la fianza de aquél, no podrá seguir ejerciendo hasta tanto que la tenga nuevamente constituída por el montante dicho.

Como consecuencia de esa obligación impuesta por la ley el notario don Rafael A. Cancel como principal y la corporación The National Surety Co. como fiadora suscribieron un documento por el cual se obligaron juntos y separadamente para con el Pueblo de Puerto Rico por la cantidad de $2,500 para ser pagados al Pueblo de Puerto Rico, siendo condición de ella el haber sido designado y nombrado dicho Cancel notario público y que si él desempeñaba y ejercía todos los deberes y obligaciones impuéstosle como tal notario público de acuerdo con la ley y todas las reglas, reglamentos y órdenes hechas de acuerdo con la ley y si daba cuenta de todas las rentas, honorarios, dinero, garantías y propiedad que viniera a sus manos como tal notario público

desde y después del primero de abril de 1920 y pagado las mismas completamente al Pueblo de Puerto Rico, entonces la obligación sería nula, y de otra manera quedaría en toda su fuerza y vigor.

El propósito y fin de la fianza exigida por la ley a los notarios fué, como ella dice, para responder de los daños y perjuicios que causen en el ejercicio de su ministerio, y por tanto cualquiera persona que resulte perjudicada por sus actos u omisiones en el cumplimiento de sus deberes como notario tienen acción contra la fianza para resarcirse de los perjuicios sufridos, sin que el hecho de que la fianza haya sido constituída a favor del Pueblo de Puerto Rico y para pagarle a él pueda ser obstáculo para que la acción de cobro de daños y perjuicios pueda dirigirse contra dicha fianza pues el Pueblo de Puerto Rico es solamente una parte nominal en ese contrato de fianza en representación de las personas desconocidas que puedan resultar perjudicadas y para cuyo beneficio fué requerida por la ley. Sostener que la fianza sólo responde a la entidad Pueblo de Puerto Rico y no a cualquiera persona perjudicada llevaría a la conclusión de que la fianza no responde a los fines para los cuales fué exigida, o sea, para responder a cualquiera persona perjudicada. En el caso de *Lammon* v. *Feusier,* 111 U. S. 19, aunque la fianza de un márshal no estaba constituída a favor de la persona perjudicada que ejercitaba la acción ni a favor de ninguna persona individualmente sino a favor del gobierno para indemnizar a las personas perjudicadas por su conducta, se declaró que la fianza podía ser puesta en litigio por y para beneficio de cualquiera persona. Y aunque podría decirse que tal decisión descansa en el hecho de que la ley autorizaba a cualquiera persona para demandar por el perjuicio causado por dicho funcionario y que en nuestra Ley Notarial no hay tal autorización, diremos que en otra decisión más reciente que la anterior, *Howard* v. *United States,* 184 U. S. 687, que sólo se dife-

rencia del presente en que en éste se trata de un notario y en aquél de un empleado judicial, la Corte Suprema de los Estados Unidos dijo:

"Pero se dice que habiendo sido la fianza en este caso otorgada a favor de los Estados Unidos, debe considerarse como que es un documento para beneficio único del gobierno y que por tanto no se puede sostener ningún pleito en virtud de la misma en beneficio de un litigante particular, aunque tal litigante pueda haber sufrido perjuicios por dejar el secretario de la corte de cumplir su deber. Esto resulta, según es de suponerse, del hecho de que no hay ley alguna que autorice expresamente tal pleito. Si esta suposición fuera correcta, se desprendería que las fianzas exigidas a los secretarios de las cortes federales no son prestadas en ningún caso pára la protección de litigantes particulares. Somos de opinión que el Congreso nunca intentó que existiera tal estado de cosas, sino que su intención fué que la fianza prestada por un secretario fuera para proteger toda clase de litigantes, ya sean públicos o privados, y con tal fin autorizó que la fianza de éste fuese aumentada a cuarenta mil dólares. Es imposible suponer que al exigir a un secretario que preste fianza a favor de los Estados Unidos 'con el fin de cumplir fielmente los deberes de su cargo y anotar oportunamente los decretos, sentencias, y resoluciones de la corte,' el Congreso tuvo en mente los intereses de los Estados Unidos solamente, y que intencionalmente se abstuvo de proveer disposición alguna para garantía de litigantes particulares en las cortes federales. Tal conclusión sería inconsistente con la práctica seguida durante un siglo y sería una gran sorpresa para la profesión. Como muy bien pudo preverse cuando se establecieron dichas cortes primeramente, la gran mayoría de los litigios en las cortes de distrito y en las cortes de circuito de los Estados Unidos, han sido siempre entre individuos particulares y por consiguiente las palabras que aparecen más arriba entre comillas debe presumirse que se referían tanto a litigantes particulares como a los Estados Unidos. En nuestra opinión la fianza prestada por el secretario es en beneficio de todo litigante perjudicado por la falta de ese funcionario de cumplir fielmente sus deberes o de anotar oportunamente los decretos, sentencias y resoluciones de la corte."

Por consiguiente hay que llegar a la conclusión de que

la fianza prestada por The National Surety Co. responde de la reclamación hecha por los demandantes.

Para precisar la cantidad que los demandantes tienen derecho a cobrar como indemnización tendremos en cuenta que según el arancel notarial los derechos en él fijados al notario por la escritura que fué otorgada son 'de $233.30, que es el medio por ciento de los $46,660 valor de los bienes inventariados, que con $90.50 que según arancel costarán las nuevas inscripciones que se hagan suman $323.80. *Por consiguiente la sentencia apelada debe ser revocada y dictarse otra por nosotros declarando con lugar la demanda y condenando a los demandados a pagar mancomunada y solidariamente a los demandantes la cantidad de $323.80, sin especial condena de costas.*