José Lázaro Costa, demandante y apelante, *v.* Sucn. de Luis Toro Cabañas, compuesta de su esposa Sra. Josefa Montoto, de su hermano Juan Antonio Toro y de su padre Luis Toro Pérez, demandados y apelados; El Pueblo de Puerto Rico, interventor.

Núm. 7166.—*Sometido:* Abril 13, 1937. *Resuelto:* Mayo 16, 1938.

*R. Díaz Cintrón,* abogado del apelante; *Hon. Procurador General B. Fernández García, R. Cordovés Arana, Procurador General Auxiliar y M. Rodríguez Ramos, Subprocurador,* abogados del Pue-

blo de Puerto Rico, interventor; *F. González Fagundo,* abogado del Sr. Luis Toro Pérez, apelado; *J. Valldejuli Rodríguez,* abogado de la Sra. Montoto Vda. de Toro; y *Juan B. Soto,* abogado de la Maryland Casualty Company.

EL JUEZ ASOCIADO SEÑOR WOLF emitió la opinión del tribunal.

De la segunda demanda enmendada presentada en este caso se desprende que José Lázaro Costa inició un pleito contra la sucesión del notario público Luis Toro Cabañas, compuesta de su padre, Luis Toro Pérez; contra su viuda, Josefa Montoto, como miembro supérstite de la sociedad de gananciales; y también contra la Maryland Casualty Co. La última demandada mencionada fué incluída en el caso como fiadora, hasta la suma de $2,500, por el fiel cumplimiento de los deberes de Luis Toro Cabañas como notario público. Mientras se trababa la contienda entre el demandante y la última demandada mencionada, El Pueblo de Puerto Rico obtuvo permiso para intervenir y alegó una preferencia sobre el importe de la fianza.

Finalmente la Maryland Casualty Co. radicó una demanda de *interpleader,* y, con el consentimiento de las otras partes, consignó los $2,500 en la corte, sujetos a la decisión judicial que se dictara sobre las reclamaciones contradictorias de José Lázaro Costa y El Pueblo de Puerto Rico. La Corte de Distrito de San Juan dictó sentencia en favor del demandante y contra la sucesión de Luis Toro Cabañas por la suma de $4,050 más intereses, y también dictó sentencia decretando una preferencia a favor de El Pueblo de Puerto Rico en cuanto a la suma de $2,500 consignada en corte por la Maryland Casualty Co. El demandante, José Lázaro Costa, ha apelado.

La Corte de Distrito de San Juan resolvió que Luis Toro Cabañas había estado ejerciendo la profesión de abogado y notario público y que para garantizar el fiel cumplimiento del notariado había prestado una fianza por la suma de $2,500 con la Maryland Casualty Co. como fiadora; que en 25 de octubre

de 1933 el demandante entregó a Luis Toro Cabañas la suma de $4,050 en efectivo con instrucciones de preparar la cancelación de dos créditos hipotecarios que pesaban sobre una finca que el demandante se proponía comprar y de las cuales el acreedor hipotecario era Ramón Aboy; y que Luis Toro Cabañas murió el 11 de diciembre de 1933. Entonces la corte continuó concluyendo en efecto que si bien el notario había redactado la escritura de cancelación, nunca había entregado el dinero al acreedor hipotecario; que el demandante había exigido la devolución de los $4,050 de la sucesión Toro Cabañas, pero que no tuvo éxito en ello; que el finado notario había dejado de cancelar sellos de rentas internas en muchas escrituras que había otorgado y que esta falta se había prolongado desde 1921 hasta la fecha de su muerte en 1933, y que la fianza de la Maryland Casualty Co. cubría estas infracciones. Luego de aducir otros hechos que no creemos necesario transcribir, la corte de distrito llegó a la conclusión de que la controversia en el caso era si los $2,500 debían ser pagados preferentemente a El Pueblo de Puerto Rico.

El demandante sostenía que si la fiadora era responsable de algo bajo la fianza, esa responsabilidad debía limitarse al último año en que el notario ejercía su profesión, o en otras palabras, que El Pueblo de Puerto Rico no tenía derecho a obtener más del valor de los sellos que el notario dejó de adherir durante el último año. La corte inferior dice que también estaba envuelta una cuestión de prescripción, aunque discute la cuestión conjuntamente.

Cuatro son los errores señalados por el apelante José Lázaro Costa. El más importante ataca la resolución de la corte inferior a virtud de la cual al Pueblo de Puerto Rico se le dió una preferencia absoluta sobre el apelante con respecto al importe de la fianza. En respuesta al énfasis especial dado a este señalamiento por el apelante mismo en su alegato, dedicaremos gran parte de nuestra opinión a su discusión.

██ Todos los señalamientos, a excepción, posiblemente, del primero, se refieren a la fianza suscrita por el notario y la Maryland Casualty Co. Esta fianza lee así:

"MARYLAND CASUALTY COMPANY—Baltimore—Fianza de Luis Toro Cabañas.

"SEPAN TODOS LOS QUE LA PRESENTE VIEREN: Que nosotros, Luis Toro Cabañas, de Yabucoa, como principal, y The Maryland Casualty Company, corporación del Estado de Maryland, con oficina principal en la ciudad de Baltimore, como fiadora, nos hacemos directa y firmemente responsables a favor de El Pueblo de Puerto Rico por la suma de DOS MIL QUINIENTOS DÓLARES ($2,500), moneda legal de los Estados Unidos, para ser pagada a El Pueblo de Puerto Rico, y al fiel y eficaz pago de la cual nos obligamos nosotros mismos, así como nuestros herederos, albaceas y administradores, mancomunada y solidariamente, por medio de la presente.

"EN TESTIMONIO DE LO CUAL, el referido Luis Toro Cabañas, como principal, ha firmado su nombre y reconocido esta fianza, y la dicha Maryland Casualty Company, como fiadora, por medio de sus funcionarios debidamente nombrados y legalmente autorizados, ha suscrito la misma y estampado su sello corporativo, hoy día 19 de diciembre de 1921.

"La condición de la anterior obligación es tal, que POR CUANTO el referido Luis Toro Cabañas ha sido debidamente designado y nombrado como notario público.

"POR TANTO, si el mencionado Luis Toro Cabañas cumple y desempeña bien y fielmente con todos los deberes impuéstosle y con la confianza en él depositada como tal notario público, de acuerdo con la ley, con las reglas, reglamentos y órdenes dictados de conformidad con la misma, y da cuenta fiel y exacta de todos los ingresos, honorarios, dineros, garantías y bienes que vayan a su poder como tal notario público desde y a partir del día 19 de diciembre de 1921, entonces esta obligación será nula; de lo contrario estará y continuará en toda su fuerza y vigor.

"Queda mutuamente convenido y entendido entre todas las partes que intervienen en la presente, que la Maryland Casualty Company puede, al notificar por escrito con no menos de sesenta días de anticipación, al Presidente de la Corte Suprema de Puerto Rico, terminar la responsabilidad por ella aquí contraída, en tanto en cuanto a las actuaciones u omisiones del referido Luis Toro Cabañas se refiere, posteriores a la terminación de dicho período de sesenta

días, caso en el cual la Maryland Casualty Company, al solicitársele, devolverá la parte proporcional de la prima pagada por el período no vencido de esta fianza.''

Teniendo muy presentes los términos expresos de esta fianza, estamos preparados para convenir con la corte inferior en que tanto el dejar de cancelar los sellos de rentas internas en las muchas escrituras notariales otorgadas por Toro Cabañas, requeridos por la ley, como el acto de apropiarse los $4,050 confiádosle como notario, caían dentro de los amplios términos de la cláusula de la fianza en que la compañía se hacía responsable. Ambas cosas fueron omisiones o comisiones en violación de los deberes del notario y de la confianza en él depositada. De esto no tenemos duda.

Los señalamientos primero y segundo suscitan la contención de que (a) los sellos de rentas internas en una escritura notarial no establecen un impuesto y que el deber de adherirlos no recae sobre el notario, y (b) que aun si se les considerara como un impuesto de cuyo cobro los notarios son responsables, el deber de cancelarlos no es uno oficial o ministerial proveniente del ejercicio del notariado.

Estamos satisfechos con la discusión de este punto, conforme la misma aparece en la opinión de la corte inferior. La cancelación de ciertos sellos de rentas internas en toda escritura notarial es, en su esencia, una manera que El Pueblo de Puerto Rico tiene para recaudar ingresos y el deber de cumplir con tal requisito, a nuestro juicio, recae primordialmente sobre los notarios de esta Isla. Con ello las partes no quedan relevadas de la responsabilidad de suministrar los sellos al notario.

La Ley núm. 34 de 1912 (Leyes de ese año, pág. 71) dispone:

''Sección 1.—El artículo 31 de la Ley titulada 'Ley para enmendar el Capítulo II, Título IX, del Código Político, y para derogar ciertas secciones del Código Penal, y para otros fines,' aprobada el 9 de marzo de 1905 y enmendada el 14 de marzo de 1907, queda enmendada en la forma siguiente:

" 'Se impondrá, cobrará y pagará:

" '(1) Sobre cada instrumento o documento original autorizado por notario público o inscrito por un registrador—un *dollar; Disponiéndose,* que en los documentos que se otorgaren por funcionarios en el curso de asuntos oficiales no se impondrá, cobrará o pagará ningún impuesto.

" '(2) Sobre cada copia de dichos instrumentos o documentos originales—cincuenta centavos.

" '(3) Por cada registro o inscripción de dichos instrumentos o documentos o de sus copias—cincuenta centavos.

" '(4) Por cada *affidavit* o declaración de autenticidad otorgado ante notario público, juez de paz, u otro funcionario, pero sin incluir a los funcionarios del Servicio de Rentas Internas cuando tomaren declaraciones, *affidavits* y juramentos en materias referentes a la tasación de la propiedad, y a infracciones de las leyes de rentas internas—veinte y cinco centavos; *Disponiéndose,* que no se impondrá el impuesto en los instrumentos que se otorgaren ante los jueces de paz, u otros funcionarios judiciales, referentemente a los asuntos en procedimientos judiciales de que ellos conocieren.

" 'Los impuestos que por la presente se disponen se pagarán fijando al documento, instrumento, *affidavit* o declaración de autenticidad, un sello de rentas internas de la debida denominación, el cual será cancelado por el funcionario ante el cual se otorgare el documento o instrumento, escribiendo en el mismo sus iniciales, y la fecha en que se fija.

" 'Toda persona que autorizare o inscribiere, o haga que se autorice o inscriba, cualquier instrumento, o documento o su copia, sin que antes se haya pagado el impuesto prescrito en esta Sección, convicta que fuere será castigada con multa de cien *dollars.' "

La Ley núm. 31 de 1917 (Leyes de ese año (2), pág. 307) especifica de manera más completa los sellos que se deben cancelar en escrituras notariales en proporción a la suma envuelta en la transacción. Sin embargo, conforme dice la corte inferior, la ley de 1917, supra, no derogó expresamente la de 1912, excepto en tanto en cuanto las mismas resultan inconsistentes. Interpretando estos estatutos y la jurisprudencia sentada en los casos de *M. Grau e Hijos* v. *Registrador,* 23 D.P.R. 380, y *Pueblo* v. *Fernández,* 19 D.P.R. 1055, llegamos a la conclusión de que el cancelar sellos de rentas inter-

nas en las escrituras notariales, de acuerdo con la ley, era uno de los deberes oficiales impuestos al notario, y que tal deber estaba cubierto por la fianza que está bajo nuestra consideración.

La única parte del cuarto señalamiento que ha sido discutida por el apelante en su alegato, se refiere a la prescripción de la responsabilidad por los sellos omitidos con más de un año de anterioridad a la muerte del notario. El apelante pasa por alto el hecho de que la teoría del litigio se basa primordialmente en un contrato de garantía y no en un acto de negligencia o torticero. Por tanto, la responsabilidad no se limita al período de un año sino que es continua en su naturaleza. Además, véase *Pueblo de Puerto Rico* v. *American Surety Co.*, 10 P. R. Fed. 190.

Ahora que hemos resuelto los errores que preceden, podemos proceder a determinar la forma exacta en que debe adjudicarse el importe de la fianza prestada por la Maryland Casualty Co.

La corte inferior resolvió que El Pueblo de Puerto Rico gozaba de una preferencia absoluta sobre el demandante con respecto a la fianza de la Maryland Casualty Co. Hemos leído los argumentos presentados por ambas partes en apelación, y llegado a la conclusión definitiva de que no existe preferencia alguna en favor de El Pueblo de Puerto Rico.

La fianza, aunque concebida en términos que aparentemente excluyen de su protección a todo el mundo a excepción de El Pueblo de Puerto Rico, fué prestada realmente para garantizar a favor de El Pueblo de Puerto Rico, el fiel cumplimiento de los deberes notariales y de la confianza (*trusts*) y obligaciones que se enumeran. Fué a El Pueblo de Puerto Rico, compuesto de uno o más de sus ciudadanos, que pudieran ser perjudicados por las actuaciones del notario, a quien la fianza tenía el propósito de cubrir, así como a la entidad política conocida con el nombre de El Pueblo de Puerto Rico. Esta naturaleza legal de la fianza fué expresada por este

tribunal en el caso de *Del Río Torres* v. *Sucn. Cancel et al.*, 36 D.P.R. 519, en el cual dijimos: ·

"El propósito y fin de la fianza exigida por la ley a los notarios fué, como ella dice, para responder de los daños y perjuicios que causen en el ejercicio de su ministerio, y por tanto cualquiera persona que resulte perjudicada por sus actos u omisiones en. el cumplimiento de sus deberes como notario tiene acción contra la fianza para resarcirse de los perjuicios sufridos, sin que el hecho de que la fianza haya sido constituída a favor del Pueblo de Puerto Rico y para pagarle a él pueda ser obstáculo para que la acción de cobro de daños y perjuicios pueda dirigirse contra dicha fianza pues el Pueblo de Puerto Rico es solamente una parte nominal en ese contrato de fianza en representación de las personas desconocidas que puedan .resultar perjudicadas y para cuyo beneficio fué requerida por la ley. Sostener que la fianza sólo responde a la entidad Pueblo de Puerto Rico y no a cualquiera persona perjudicada llevaría a la conclusión de que la fianza no responde a los fines para los cuales fué exigida, o sea, para responder a cualquiera persona perjudicada."

█ Una vez que se ha sentado esta premisa no hallamos base para preferir al Pueblo de Puerto Rico sobre el demandante en este caso. Ningún estatuto lo dispone así expresamente y el contexto de la fianza no sostiene tal proposición.

El artículo 1826, inciso 2, de nuestro Código Civil (edición de 1930) no establece esta preferencia, según sostiene el interventor. Éste lee así:

"Los créditos que gozan de preferencia con relación a determinados bienes muebles, excluyen a todos los demás hasta donde alcance el valor del mueble a que la preferencia se refiere.

"Si concurren dos o más respectos a determinados muebles, se observarán, en cuanto a la prelación para su pago, las reglas siguientes:

"1. . . . . . . . . . . .

"2.—En el caso de fianza, si estuviera ésta legítimamente constituída a favor de más de un acreedor, la prelación entre ellos se determinará por el orden de fechas de la prestación de la garantía.

"'. . . . . . . . . . ."

Ese artículo se refiere en especial a aquellos casos en que se ha prestado más de una fianza en favor de distintos acree-

dores y se ha dado una sola propiedad mueble en garantía. Ésa no es la situación con que nos confrontamos. Aquí tenemos una fianza para garantizar el fiel cumplimiento de los deberes de un notario, otorgada en una fecha original, a favor de todas aquellas personas que pudieran ser perjudicadas en el futuro. Hasta que se agote el importe de esa fianza por sentencias obtenidas y ejecutadas contra ella, cosa que ahora no está ante nos, toda persona con derecho a su protección, y que oportunamente ha radicado su reclamación, debe ser protegida proporcionalmente por esa fianza.

El caso citado por el interventor no es aplicable al recurso que está ante nos. Esa decisión—*Brunet, Sáenz & Co.* v. *Aponte,* 33 D.P.R. 524—se basó en la interpretación del alcance de la responsabilidad contraída por los fiadores. En la fianza sólo se especificó un beneficiario. Allí no estaba envuelta ninguna cuestión de preferencia, y el caso se resolvió realmente sobre sus hechos especiales y se interpretó estrictamente en favor de los aseguradores.

Si algún artículo de nuestro Código Civil es aplicable al presente caso, éste es el 1829, que provee:

"Los créditos que no gocen de preferencia con relación a determinados bienes, y los que la gozaren, por la cantidad no realizada, o cuando hubiese prescrito el derecho a la preferencia, se satisfarán conforme a las reglas siguientes:

"1. Por el orden establecido en el artículo 1824.

"2. Los preferentes por fechas, por el orden de éstas, y los que la tuviesen común, a prorrata.

"3. Los créditos comunes a que se refiere el artículo 1825, sin consideración a su fechas."

Somos de opinión que los créditos que están ante nos no tienen preferencia alguna sobre determinados bienes, aunque es cierto que El Pueblo de Puerto Rico, de haber sido diligente, pudo haber cobrado sus derechos de año en año, con exclusión del aquí demandante. Empero, si hubiera hecho esto, tal vez no hubiera surgido la situación que ahora está ante nos, o la fianza habría redundado enteramente en bene-

ficio del demandante. La Ley Notarial exige que se haga una inspección periódica de los protocolos de los notarios. No se cumplió con este requisito en el presente caso por espacio de más de doce años. Los terceros que hasta cierto punto descansaron en el fiel y puntual cumplimiento de los deberes del notario, basados si acaso tan sólo en el mero hecho de que este funcionario continuaba ejerciendo como tal, no deben sufrir más de lo necesario por la actitud pasiva, quizá negligente, de los funcionarios de El Pueblo de Puerto Rico. Si el método dispuesto por la ley no es práctico, deben tomarse las medidas adecuadas para que el mismo sea remediado por la Asamblea Legislativa.

*Por las razones antes expuestas, somos de opinión que los $2,500 consignados en la corte por la Maryland Casualty Co. deben ser divididos entre El Pueblo de Puerto Rico y José Lázaro Costa en proporción directa a sus respectivas reclamaciones, y así se ordena.*