EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| In re:<br><br>Osvaldo Ortiz Medina | 2008 TSPR 183<br><br>175 DPR _____ |

Número del Caso: CP-2007-15

Fecha: 17 de noviembre de 2008

Oficina del Procurador General:

        Lcda. Wanda I. Simons García
        Procuradora General Auxiliar

Abogado de la Parte Querellada

        Lcdo. Francisco J. Vilanova Montalvo

Materia: Conducta Profesional

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

In re:

Osvaldo Ortiz Medina          CP-2007-15          Conducta
                                                  Profesional

PER CURIAM

San Juan, Puerto Rico, a 17 de noviembre de 2008.

Los esposos Luis A. Rodríguez Pérez y Zayra Morales Estrada presentaron ante la Oficina del Procurador General una queja en contra del Lcdo. Osvaldo Ortiz Medina, por éste haber autenticado sus firmas en un contrato de compraventa en violación del Art. 56 de la Ley Notarial de Puerto Rico, 4 L.P.R.A. sec. 2091. A raíz de dicha queja, el Procurador General nos remitió un Informe Preliminar con sus hallazgos sobre el proceder del licenciado Ortiz Medina y, en atención al mismo, ordenamos la presentación de la querella de autos. Posteriormente, designamos

al Lcdo. Carlos de Jesús Rivera Marrero como Comisionado Especial, con la encomienda de recibir la prueba y someter ante nuestra consideración una recomendación al respecto.

Tras examinar su informe, así como los argumentos esbozados por el licenciado Ortiz Medina en cuanto a la presente querella, lo censuramos *enérgicamente* por su inobservancia de las normas que gobiernan el ejercicio de la notaría en nuestra jurisdicción.

## I.

Los hechos narrados a continuación surgen del Informe del Comisionado Especial, así como de los documentos que obran en autos.

El licenciado Ortiz Medina fue admitido al ejercicio de la abogacía el 26 de junio de 1987 y prestó juramento como notario el 2 de octubre de ese mismo año. Precisamente, en ejercicio de su función notarial, el 21 de marzo de 2003 éste legitimó mediante un testimonio de autenticidad las firmas de un contrato de compraventa suscrito por los esposos Rodríguez-Morales y Monte Carlo Development Corp.

En particular, el referido contrato tenía como objeto un lote que era parte de una finca propiedad de Monte Carlo Development, ubicada en el Municipio de Cabo Rojo. Según los términos del convenio, dicha finca había sido dividida en unos diez solares que, al momento de su firma, aún estaban pendientes de segregación. En lo pertinente a la querella ante nuestra consideración, el contrato de

compraventa señalaba que los esposos Rodríguez Morales pagaron $25,000.00 a cambio del "Lote Núm. 7" de la finca aludida, con una cabida aproximada de 984.16 m². Sin embargo, la entrega de dicho lote estaría sujeta a la aprobación de la segregación por parte de la Administración de Reglamentos y Permisos (ARPE), así como a la instalación por Monte Carlo Development de toda la infraestructura relativa a los servicios de agua potable, electricidad y caminos de acceso.

En este sentido, Monte Carlo Development tenía un año, a partir de la firma del contrato de compraventa, para cumplir con ambas condiciones. Si se obtenía la aprobación de ARPE dentro de dicho término, Monte Carlo Development otorgaría la escritura pública correspondiente y entegraría el lote objeto del contrato. De no realizarse tal gestión en el término convenido, las partes podían prorrogar el mismo u optar por resolverlo, en cuyo caso Monte Carlo Development devolvería la totalidad del dinero recibido a cambio del mencionado lote.[1]

Así las cosas, al concluir el plazo para segregar el lote en cuestión e instalar la infraestructura mencionada, Monte Carlo aún no había cumplido con las condiciones antes

---

[1] En el contrato aludido, las partes también hicieron constar que la finca matriz de la cual se habría de segregar el "Lote Núm. 7" estaba afecta a una hipoteca de $15,000.00, la cual se cancelaría al momento de firmarse la escritura correspondiente. Por otra parte, los esposos Rodríguez-Morales se comprometieron a aceptar las condiciones restrictivas que se habrían de fijar en cuanto al uso del "Lote Núm. 7" como, por ejemplo, la prohibición de la instalación de verjas de tipo eslabonado.

reseñadas. En vista de ello, los esposos Rodríguez-Morales solicitaron la resolución del contrato y la devolución del dinero que pagaron por el solar. Sin embargo, como inicialmente sus gestiones a esos efectos no dieron resultado, tras obtener asesoramiento sobre la validez de dicho contrato, éstos acudieron ante la Oficina del Procurador General y presentaron una queja en contra del licenciado Ortiz Medina.

A petición del Procurador General, el licenciado Ortiz Medina contestó los señalamientos de los esposos Rodríguez-Morales y adujo que no participó en la redacción del referido contrato de compraventa, ni intervino en la negociación entre las partes. Además, alegó que como no era oficial ni accionista de la corporación vendedora, entendía que no había incurrido en violación ética alguna. Del mismo modo, señaló que las partes tenían conocimiento pleno del negocio que llevarían a cabo y que aceptaron el contrato según éste fue redactado. Por último, expresó que estaba gestionando la devolución de los $25,000.00 que Monte Carlo le había cobrado a los esposos Rodríguez-Morales.

El Procurador General nos presentó oportunamente un Informe Preliminar sobre el asunto, y tras concederle un término para ello, el licenciado Ortiz Medina se expresó en torno al mismo. En su comparecencia aceptó haber autorizado un testimonio de autenticidad en el contrato de compraventa antes reseñado, pero reiteró que no había actuado indebidamente. Además, reconoció que durante la firma del

contrato tanto él como las partes enfatizaron que el aspecto económico del negocio era atractivo y, por ende, que el mismo sería beneficioso para los esposos Rodríguez-Morales. No obstante, éste señaló que al tener conocimiento sobre el incumplimiento de Monte Carlo Development con las condiciones estipuladas en el citado contrato, procedió a gestionar personalmente la devolución de los $25,000.00 cobrados por dicha empresa, así como el pago de $500.00 por los gastos en que incurrieron los esposos Rodríguez-Morales.

Tras considerar detenidamente el asunto, le ordenamos al Procurador General presentar la querella de autos. En ella se le imputa al licenciado Ortiz Medina una violación al Canon 18 del Código de Ética Profesional, 4 L.P.R.A. Ap. IX, al autorizar un testimonio de autenticidad en un contrato de compraventa en contravención del Art. 56 de la Ley Notarial, 4 L.P.R.A. sec. 2091, así como de la Regla 68 del Reglamento Notarial de Puerto Rico, 4 L.P.R.A. Ap. XXIV. En síntesis, ambas disposiciones prohíben que los notarios legitimen firmas en contratos como el de autos.

Por su parte, en su contestación a dicha querella, el licenciado Ortiz Medina argumenta que la controversia en torno al procedimiento disciplinario de autos se circunscribe a determinar si el contrato antes citado era realmente una compraventa perfecta. En este sentido, Ortiz Medina señala que como dicho acuerdo estaba sujeto a una condición suspensiva —la segregación del lote y la

instalación de la infraestructura correspondiente—, en ausencia de su cumplimiento la compraventa carecía de eficacia. Por ello, aduce que su intervención en el contrato aludido no violentó el Art. 56 de la Ley Notarial, *supra*, pues mediante dicha transacción no se llegó a transmitir un derecho real sobre un bien inmueble.

Examinamos la presente querella de conformidad con las determinaciones de hecho del Comisionado Especial, en ejercicio de nuestra inherente facultad disciplinaria.

## II.

## A.

Como se sabe, el Canon 18 del Código de Ética Profesional requiere que los abogados se abstengan de asumir la representación legal de cualquier cliente cuando sean conscientes de no poder realizar una labor idónea y competente, o de no poder prepararse adecuadamente para defender las causas de éste sin aumentar irrazonablemente sus gastos o los del sistema de justicia. 4 L.P.R.A. Ap. IX. Así, pues, todo abogado debe defender los intereses de sus clientes con la mayor diligencia, demostrando en cada una de sus intervenciones su más profundo saber y habilidad. En todo momento debe satisfacer —y esforzarse por exceder— aquella medida que la profesión jurídica estime como la más adecuada y responsable. La indiferencia, la desidia, la despreocupación, la inacción y la displicencia no son las cualidades que deben encarnar a un abogado admitido por este Tribunal a la práctica del

Derecho. E.g. In re León Malavé, 2008 T.S.P.R. 27, res. 17 de enero de 2008.

Ahora bien, el deber de competencia y diligencia que les impone el citado canon a los abogados toma un matiz distinto cuando éstos ejercen la función notarial. Como hemos aclarado en múltiples ocasiones, el abogado representa los intereses de su cliente; el notario, en cambio, no tiene cliente alguno. Más bien, el notario es el profesional del Derecho que ejerce una función pública, autorizado por la ley para dar fe y autenticidad a los negocios jurídicos y demás actos o hechos extrajudiciales que se realicen ante él. Art. 2 de la Ley Notarial, 4 L.P.R.A. sec. 2002; véase, además, In re Raya, 117 D.P.R. 797, 802-03 (1986).

La responsabilidad del notario en cuanto a ese deber es aún mayor, pues en la función que desempeña, el valor de la voluntad informada de los comparecientes es, en definitiva, la base sobre la cual descansa la fe pública notarial. En la medida en que el notario no se oriente sobre las normas relativas al negocio que deseen realizar las partes contratantes, el consentimiento prestado por éstas será el fruto de la ignorancia o de la falta de claridad. Como consecuencia de ello, el documento público que autorice carecerá de eficacia jurídica alguna. Véase In re Meléndez Pérez, 104 D.P.R. 770, 775-76 (1976). En suma, un notario que desconoce las normas jurídicas relativas, no sólo al ejercicio de su profesión, sino a las relaciones e

intereses de los ciudadanos que recurren ante él, realmente vulnera la naturaleza misma del notariado en nuestra jurisdicción.

En esta ocasión, nos corresponde determinar si la actuación del licenciado Ortiz Medina al autorizar un testimonio de autenticidad al pie de un documento titulado "contrato de compraventa", es ejemplo de la habilidad requerida a los notarios como profesionales del Derecho y custodios de la fe pública. Veamos.

B.

El Art. 56 de la Ley Notarial, *supra*, autoriza que los notarios den testimonio, a petición de una parte interesada, de la autenticidad de un documento no matriz; es decir, de aquel que no forma parte del protocolo de instrumentos públicos. Además de dar fe sobre la fecha en la cual se autorizó el referido testimonio, el notario puede dar fe de la legitimación de las firmas que aparezcan en el documento. De esta manera, se acredita que las personas firmantes suscribieron el mismo en presencia del notario y que, a su vez, éste las conoce personalmente o, en su defecto, las identificó mediante los medios supletorios que provee la ley. Véanse, además, Regla 67 del Reglamento Notarial, *supra*; S. Torres Peralta, El Derecho notarial puertorriqueño, 1995, San Juan, Publicaciones STP, pág. 15.11.

En Puerto Rico, la reglamentación del testimonio de autenticidad vino a sustituir, en gran medida, la anterior

normativa sobre los llamados afidávits, provenientes del derecho anglosajón. Los testimonios, arraigados en la tradición notarial latina, no son documentos notariales de segunda categoría, sino que poseen su propia importancia en el tráfico jurídico cotidiano según los efectos particulares que se les adscriban a éstos. Así, por ejemplo, el testimonio de legitimación de firmas tiene el efecto de disipar las dudas sobre la autenticidad de la firma de un documento determinado; o sea, si la firma es de la persona a quien se le atribuye. P. Ávila Álvarez, Estudios de Derecho Notarial, 1973, Madrid, Ed. Montecorvo, 4ta ed., págs. 283, 287-88.

Ahora bien, precisamente en función de esos efectos, el alcance de la facultad legitimadora del notario no se extiende a los negocios que, según el Art. 1232 del Código Civil de Puerto Rico, 31 L.P.R.A. sec. 3453, deben constar en un documento público. Entre ellos se encuentran, en particular, los actos y contratos que tengan por objeto la creación, transmisión, modificación o extinción de derechos reales sobre bienes inmuebles. 31 L.P.R.A. sec. 3453(1). Así, pues, en términos expresos, la Ley Notarial establece que no se podrá autorizar un testimonio de autenticidad en tales contratos.

En esencia, el fundamento para dicha prohibición radica en que, de ordinario, el notario no asume responsabilidad por el contenido de los documentos privados cuyas firmas legitime. Art. 56 de la Ley Notarial, *supra*;

cf. In re Colón Ramery, 138 D.P.R. 793, 799 (1995).[2] Por tal razón, la autorización de un testimonio de autenticidad en los casos antes mencionados tendría el resultado de frustrar el objetivo del Código Civil al requerir, a instancias de cualquier parte contratante, la preparación de una escritura pública en tales circunstancias: garantizar que, al prestar su consentimiento a un contrato sobre bienes inmuebles, los otorgantes conozcan plenamente las consecuencias del negocio que pretenden llevar a cabo. Más aún, es sólo de esta manera que el contrato puede servir como título inscribible en el Registro de la Propiedad. Véanse Arts. 38, 42 y 43 de la Ley Hipotecaria y del Registro de la Propiedad, 30 L.P.R.A. secs. 2201, 2205-06.

En fin, no tendría sentido emplear la función notarial para darle autenticidad y eficacia a un mero documento privado, cuando la tarea primordial del notario consiste en autorizar, como un instrumento público, el negocio plasmado en el mismo. Es preciso advertir, además, que la referida prohibición también responde al hecho de que los negocios sobre bienes inmuebles están sujetos al pago de aranceles. Por ende, para evitar que el notario se convierta en cómplice de una posible evasión contributiva, la Ley Notarial establece que si ha de intervenir en un contrato

---

[2] Ahora bien, si el notario conoce sobre la nulidad o falsedad del documento, éste podría enfrentar sanciones disciplinarias. Véanse, e.g., In re Criado Vázquez, 155 D.P.R. 436 (2001); In re Caratini Alvarado, 153 D.P.R. 575 (2001).

de tal naturaleza, sólo podrá hacerlo mediante la autorización de un documento público. Véanse, en general, 4 L.P.R.A. secs. 851-58; In re Feliciano, 115 D.P.R. 172 (1984); Lázaro v. Sucn. Toro Cabañas, 53 D.P.R. 201 (1938); E. Giménez Arnau, Derecho Notarial, 1976, Pamplona, Ed. Univ. de Navarra, págs. 801-06.

Por último, la Ley Notarial prohíbe específicamente que se autoricen testimonios de autenticidad en contratos con los cuales se pretenda adjudicar o vender, ya sea expresa o implícitamente, una participación concreta en un bien inmueble cuya segregación no haya sido aprobada con anterioridad por las agencias correspondientes. De hecho, aun en el caso de que la referida venta se haga mediante escritura pública, el Art. 15(g) de la Ley Notarial exige que el notario les advierta a los contratantes que tras la celebración de dicha compraventa éstos pasarán a formar parte de una comunidad de bienes, como propietarios de una porción abstracta e indefinida del inmueble objeto del negocio. Además, debe advertirles que no podrán segregar, identificar, lotificar o marcar su participación sobre dicho bien sin obtener previamente la autorización de las agencias concernidas.[3] 4 L.P.R.A. secs. 2033 y 2091; véanse,

---

[3] Aparte de las razones antes señaladas, esta prohibición surgió a raíz de la práctica de vender "lotes" o "solares" en fincas rústicas sin que las agencias urbanísticas, como la Administración de Reglamentos y Permisos (ARPE) o la Junta de Planificación (JP), aprobaran el desarrollo. A través de dicha modalidad, popularizada en Puerto Rico durante los años setenta y ochenta, se inducía a los compradores a pensar que adquirían un título sobre un lote concreto, cuando en realidad lo que compraban era una

además, In re Molina Fragosa, 2006 T.S.P.R. 8, res. 19 de

diciembre de 2005; In re Aponte Berdecía, 161 D.P.R. 94

(2004).

III.

En el presente caso, a pesar de las prohibiciones

antes reseñadas, el licenciado Ortiz Medina acepta que

autorizó un testimonio de autenticidad al pie del "contrato

de compraventa" que describimos anteriormente. No obstante,

aduce que en virtud de lo resuelto en Meléndez Martínez v.

Jiménez Realty, Inc., 98 D.P.R. 892 (1970), dicho contrato

carecía de eficacia, pues nunca se cumplió con la condición

suspensiva de la cual dependía la entrega del lote que se

le vendió a los esposos Rodríguez-Morales. Por eso señala

que no pudo haber violado las prohibiciones de la Ley

Notarial, ya que nunca intervino realmente en un contrato

de compraventa de un bien inmueble.

Ciertamente, en el citado caso de Meléndez Martínez v.

Jiménez Realty, supra, págs. 896-99, resolvimos que un

contrato en el cual se pactó la compraventa de unas

parcelas de terreno pendientes de segregación, pero cuya

---

participación en común pro indiviso de la finca matriz. Véase Exposición de Motivos, Ley Núm. 194 de 7 de agosto de 1998, 1998 L.P.R. 194, págs. 806-08.

En muchos casos la compraventa se plasmaba en una escritura pública. En otros, sin embargo, ésta se realizaba a través de un documento privado con la legitimación de las firmas mediante un testimonio de autenticidad. Cuando los compradores acudían al Registro de la Propiedad para inscribir su derecho, se topaban con la realidad de que su título no era inscribible, pues no se había obtenido la segregación del lote en cuestión o, aun cuando se obtuviera posteriormente, no se había consignado la transacción en una escritura pública. Véase 1998 L.P.R. 807-08.

eficacia se sujetó a la aprobación final de las agencias gubernamentales correspondientes, no era un pacto nulo ni contrario a la ley o al orden público. Sin embargo, nuestras expresiones en ese sentido nunca estuvieron dirigidas a validar la intervención notarial en ese tipo de contratos ni, mucho menos, a liberar al notario de su responsabilidad disciplinaria si se prueba que contravino el tenor de las prohibiciones ya mencionadas.

Como ya hemos señalado, la Ley Notarial prohíbe expresamente que los notarios legitimen las firmas de los otorgantes de contratos como el presente. Aun si la intención de los esposos Rodríguez-Morales y Monte Carlo Development fue suscribir un contrato de compraventa, sujeto a la condición suspensiva de obtener la segregación del lote vendido, dicho acuerdo era una compraventa en todo el sentido de la palabra. Además, el hecho de que la misma dependiera de una condición suspensiva no significa que la intervención del licenciado Ortiz Medina fuera correcta. Como se puede apreciar del texto claro del Art. 56 de la Ley Notarial, *supra*, las prohibiciones que éste contiene no distinguen entre las compraventas perfectas y aquellas que, por unas circunstancias determinadas, no cobran vigencia hasta que llegue un plazo o se cumpla una condición en particular.

En el caso de autos, la cláusula tercera del contrato firmado por los esposos Rodríguez-Morales y Monte Carlo Development no deja margen a dudas en cuanto al tipo de

negocio realizado por ambos. En dicha cláusula se expresa claramente que las partes acordaron celebrar un contrato de compraventa sobre el "Lote Núm. 7" de la finca propiedad de Monte Carlo Development. Además, se señala que los esposos Rodríguez-Morales entregaron, al momento de firmar el contrato, $25,000.00 como pago total por el referido solar. Sin embargo, como aún no se había obtenido la segregación del lote, ni se había construido la infraestructura necesaria para el disfrute del mismo, el cumplimiento de la prestación correspondiente a Monte Carlo —la entrega del solar— se sujetó a la condición de que ARPE aprobara la segregación.

Aunque ciertamente ello afectó la exigibilidad de la obligación objeto del contrato, somos del criterio que luego de obtenida la segregación no habría quedado nada más que negociar, pues ya las partes se habían puesto de acuerdo en cuanto al precio y la cosa objeto del contrato. Véase Soto v. Rivera, 144 D.P.R. 500 (1997). Por consiguiente, no cabe duda de que el convenio aludido era realmente una compraventa y que, en vista de ello, la actuación del licenciado Ortiz Medina al legitimar las firmas estampadas en el mismo infringió la prohibición contenida en el Art. 56 de la Ley Notarial, *supra*. Su proceder constituye un claro ejemplo de su falta de pericia en el ejercicio de la función notarial.

En atención a lo anterior, concluimos que el licenciado Ortiz Medina violó el Canon 18 del Código de

Ética Profesional, *supra*. Dado que éste realizó varias gestiones dirigidas a obtener el reembolso del dinero cobrado por Monte Carlo a los esposos Rodríguez-Morales, y en vista de que es la primera vez que le imponemos sanciones disciplinarias, lo censuramos *enérgicamente* por su inobservancia de las normas que gobiernan el ejercicio de la notaría en nuestra jurisdicción. Lo apercibimos, además, de que en el futuro deberá dar fiel cumplimiento a dichas normas, pues de no hacerlo se enfrentaría a sanciones disciplinarias más severas.

IV.

Por los fundamentos antes expuestos, se *censura enérgicamente* al licenciado Ortiz Medina por su desatención a las normas que regulan la notaría en esta jurisdicción, y se le apercibe de que en el futuro deberá dar fiel cumplimiento a dichas normas ya que, de no hacerlo, se enfrentaría a sanciones disciplinarias más severas.

Se dictará Sentencia de conformidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

In re:

Osvaldo Ortiz Medina          CP-2007-15          Conducta
                                                  Profesional

SENTENCIA

San Juan, Puerto Rico, a 17 de noviembre de 2008.

Por los fundamentos expuestos en la Opinión *Per Curiam* que antecede, la cual se hace formar parte de la presente Sentencia, se *censura enérgicamente* al licenciado Ortiz Medina por su desatención a las normas que regulan la notaría en esta jurisdicción, y se le apercibe de que en el futuro deberá dar fiel cumplimiento a dichas normas ya que, de no hacerlo, se enfrentaría a sanciones disciplinarias más severas.

Lo pronunció y manda el Tribunal y certifica la Secretaria del Tribunal Supremo Interina. La Juez Asociada señora Rodríguez Rodríguez concurre con el resultado sin opinión escrita.

Dimarie Alicea Lozada
Secretaria del Tribunal Supremo Interina