EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| In re:                     | Querella      |
|                            |               |
| Roberto Ortiz Gutiérrez    | 2001 TSPR 22  |
|                            |               |

Número del Caso: CP-1998-7

Fecha: 18/enero/2001

Oficina del Procurador General:

Lcda. Yvonne Casanova Pelosi
Procuradora General Auxiliar

Abogado de la Parte Querellada:

Lcdo. Héctor M. Torres Rodríguez

Materia: Conducta Profesional

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

In re:

Roberto Ortiz Gutiérrez

CP-1998-7

PER CURIAM

San Juan, Puerto Rico, a 18 de enero de 2001.

**El 15 de junio de 1998, el Procurador General de Puerto Rico presentó una querella ante nos contra el Lcdo. Roberto Ortiz Gutiérrez mediante la cual le imputó los siguientes cargos:**

Cargo I

El abogado Roberto Ortiz Gutiérrez incurrió en violación del Artículo 2 de la Ley Notarial de Puerto Rico (Ley Número 75 del 2 de julio de 1987), el cual obliga a todo notario a darle y autenticidad conforme a la ley de los negocios jurídicos que ante él se realizan y por ende las doctrinas establecidas por el Honorable Tribunal Supremo de Puerto Rico en los casos In Re: Vera Vélez, 136 D.P.R. 284 (1994) e In Re: Celestino Vargas, 135 D.P.R. 603 (1994).

Cargo II

**El Lcdo. Roberto Ortiz Gutiérrez incurrió en violación de los Artículos 13 y 16 de la Ley Notarial antes citada, los cuales regulan la obligación de todo notario de asegurarse que la escritura por el autorizada este firmadas por los otorgantes y sus iniciales debidamente estampadas en cada uno de los folios del de la escritura matriz u original.**

Cargo III

El Lcdo. Roberto Ortiz Gutiérrez incurrió en violación del Canon 18 de Etica Profesional, el cual obliga a todo abogado a actuar con celo, cuidado y diligencia profesional.

Cargo IV

El Lcdo. Roberto Ortiz Gutiérrez incurrió en violación del Canon 35 de Etica Profesional, el cual entre otras cosas dispone que el abogado debe ajustarse a la sinceridad de los hechos al redactar affidavits u otros documentos.

Cargo V

El Lcdo. Roberto Ortiz Gutiérrez incurrió en violación del Canon 38 de Etica Profesional el cual obliga a todo abogado a esforzarse al máximo de su capacidad para la exaltación del honor y dignidad de su profesión.

El 16 de junio de 1998, le ordenamos al querellado contestar la querella aludida dentro de un término de quince (15) días a partir de la notificación de nuestra orden, realizada personalmente el 17 de junio del mismo año. El 4 de septiembre de 1998, el querellado compareció ante nos mediante la presentación de una "Moción En Solicitud De Permiso Para Contestar Querella". El 15 de septiembre de 1998, nombramos al Hon. José Rodríguez Rivera, Ex Juez Superior, como Comisionado Especial para recibir la prueba correspondiente y rendirnos un informe con sus conclusiones de hecho y sus recomendaciones respecto a la querella.

El 25 de noviembre de 1998 se celebró la conferencia con antelación a la vista. Luego de varios trámites procesales y la presentación de diversos escritos por las partes, el 19 de agosto de 1999, el querellado contestó la querella y negó las imputaciones en su contra. El 22 de septiembre del mismo

año, el Procurador General presentó su Informe Parcial De Conferencia Entre Abogados y el 13 de octubre del mismo año, el querellado presentó el suyo.

Luego de celebrada la vista correspondiente, el 15 de noviembre de 1999, el Comisionado Especial presentó su informe sobre la presente querella. En lo pertinente, el Comisionado Especial formuló las siguientes determinaciones de hecho:

> 3. El querellado Ortiz Gutiérrez, abogado en la práctica por apróximadamente (sic) treinta años, según su propia declaración, otorgó una escritura de **compraventa** (escritura número 29 de 3 de agosto de 1993) sin contar con un estudio registral de título.
>
> 4. Subsiguientemente [,] el querellado fue al Registro de la Propiedad con los compradores y un pariente que representaba a los vendedores, quienes eran tres ancianas, para quienes fue preciso utilizar un testigo instrumental. En el Registro se comprobó que las vendedoras no eran titulares de la totalidad de la propiedad vendida, sino solo (sic) de la mitad y que para disponer de dicha totalidad eran necesarias otras gestiones a fin de lograr la completa titularidad y la inscripción registral.
>
> 5. Durante dichas gestiones en el Registro se produjeron diferencias de criterio entre los otorgantes compradores y el querellado, lo cual ocasionó un cese por parte de este (sic) de toda gestión ulterior, a fin de clarificar la situación sobre la titularidad e inscripción de la propiedad objeto de la escritura de compraventa.
>
> 6. Con posterioridad [,] los compradores en la referida escritura de compraventa demandaron judicialmente mediante acción de nulidad de escritura y daños y perjuicios [a] la parte vendedora. Mediante sentencia hoy final y firme, el Tribunal de Distrito, Sala de Cayey, resolvió el 19 de octubre de 1993 en el caso civil número CD-93-449, que la escritura en cuestión no era inscribible porque las vendedoras vendieron una propiedad afirmando que eran dueñas en pleno dominio, cuando solo (sic) lo eran de la mitad de la propiedad; que el negocio era por $27,000.00 y se reflejó la cantidad de $20,000.00 en la escritura y se consignó que los compradores eran casados, siendo solteros. En la sentencia se ordenó la restitución de los $27,000.00, más el pago de $20,000.00 por daños y perjuicios y $500.00 para costas, gastos y honorarios de abogado.
>
> 7. Conforme surge del expediente del referido caso civil y especialmente del testimonio del Lic. José Colón, testigo de refutación del Procurador General, quien nos merece crédito, el querellado se desentendió a lo largo del proceso de litigación que provocó el otorgamiento de la escritura número veintinueve, de toda gestión que pudo efectuar o colaborar efectivamente a los fines de que se corrigieran los defectos de dicha escritura que ocasionaron e impidieron la correspondiente inscripción registral del derecho de los compradores otorgantes en dicho documento notarial.
>
> 8. La aludida escritura número veintinueve cuenta con dos versiones distintas, específicamente en cuanto a la forma en que las vendedoras adquirieron la propiedad vendida. Conforme a la copia de la escritura que los compradores utilizaron y presentaron en el Tribunal (de Distrito) para accionar contra las vendedoras [,] la cláusula reza así:

TITULO, INSCRIPCION, Y CARGAS
---SEGUNDO: Adquirieron los comparecientes de la primera parte la antes descrita propiedad, según los términos de la escritura número setecientos cincuenta y seis (756), otorgada en Cayey, Puerto Rico, el día veintiocho (28) de diciembre de mil novecientos setenta (1970), ante el Notario Público, María I. Berríos Izquierdo. Consta inscrita al Folio veinte (20), vuelto del Tomo cien, de Aibonito, finca número cuatro mil trescientos noventa, Inscripción primera.'

Por el contrario, la cláusula según surge de la escritura que el querellado incorporó a su protocolo es la siguiente:

'TITULO, INSCRIPCION Y CARGAS
---Segundo: Adquirieron por herencia de su difunta sobrina María L. González, también conocida como María Luisa Ramos, según consta de la Resolución sobre Declaratoria De Herederos, en el caso GS-91-218 del catorce de octubre de mil novecientos noventa y dos, del Tribunal Superior, Sala de Guayama. Consta inscrita al Folio veinte (20), Vuelto del Tomo cien de Aibonito, finca número mil tres cientos noventa. Inscripción primera.

9. Se trata de diferencias significativas en cuanto a la titularidad y modo de adquisición de quienes advino (sic) la propiedad a las vendedoras en la mencionada escritura número veintinueve (29).

10. Tanto la querella como el propio querellado han alegado que hubo falsificación en la referida escritura, específicamente en relación a las dos versiones distintas en el instrumento notarial. A nuestro juicio [,] la evidencia para probar en un sentido u otro dicho fraude tendría que ser de carácter pericial, por envolver (sic) cuestiones de gran rigor científico, sobre la naturaleza de las huellas que aparecen en ambas versiones, las iniciales de los otorgantes y similitudes entre ellas, además del sello del notario estampado y la rúbrica. No hubo evidencia pericial de clase alguna, por lo que solo (sic) podrían formularse conjeturas sobre los elementos de prueba en las referidas versiones de la escritura número veintinueve (29), sin confiabilidad para el mejor resultado del caso. Esta situación que señalamos adquiere mayor relevancia ante la admisión del propio querellado en su testimonio de que originalmente la escritura en su protocolo no tenía las iniciales del testigo instrumental José Miguel Velázquez Meléndez en la página dos y que las mismas fueron puestas con posterioridad al otorgamiento, cuando se estaba en la etapa de la encuadernación del protocolo, hecho que tuvo que ocurrir por lo menos cinco meses después del otorgamiento del 3 de agosto de 1993.

11. Tampoco hemos tenido el beneficio de alguna explicación razonable del querellado sobre la existencia de estas dos versiones de la escritura número veintinueve (29) otorgada [ante]

él, aparte de su afirmación general sin detalles específicos de
que fue fraudulenta la segunda versión.

El Procurador General le solicitó al Comisionado Especial que enmendara su informe y que formulara determinaciones de hecho adicionales. El 22 de diciembre de 1999, el Comisionado Especial rindió un informe suplementario a fin de resolver la solicitud de determinaciones de hecho adicionales presentada por el Procurador General. Mediante éste, el Comisionado señaló lo siguiente:

> Estamos de acuerdo en concluir que los [compradores] testificaron sobre su comparecencia ante el notario Ortiz Gutiérrez; que firmaron una sola versión de la aludida escritura; que dicha versión fue la que entregaron al abogado que les llevó el caso civil y que el notario querellado no los llamó a su oficina para que firmaran una versión distinta de la escritura que firmaron al (sic) día del negocio jurídico con la parte vendedora.

Sin embargo, el Comisionado Especial reiteró que "[p]recisamente nuestra determinación anterior en el Informe original, en el sentido de que debió utilizarse un perito calígrafo obedeció a que se trata en este caso de signos, huellas digitales y razgos (sic) en la escritura de mayor o menor fuerza, [por] lo cual una persona versada y con los instrumentos apropiados debió auxiliar al juzgador."

Posteriormente, el querellado presentó sendas mociones en oposición a las determinaciones de hecho adicionales las cuales fueron declaradas sin lugar por el Comisionado Especial debido a que fueron presentadas fuera del término reglamentario.

Terminados todos los trámites pertinentes ante el Comisionado Especial, y a la luz de su informe y determinaciones de hecho, nos corresponde resolver la procedencia de la querella que aquí nos ocupa.

I

Es norma reiterada en nuestra jurisdicción el deber que tiene el notario de conocer los antecedentes registrales de una propiedad antes de proceder a autorizar una escritura sobre ella. In re Jiménez Brackel, res. 11 de mayo de 1999, 148 D.P.R. ___, 99 TSPR 73, 99 JTS 79; In re López Maldonado, 130 D.P.R. 863 (1992); In re Ramos Meléndez y Cabiya Ortiz, 120 D.P.R. 796 (1988); Chévere v. Cátala, 115 D.P.R. 432, (1984); Goenaga v. O'Neill de Milán, 85 D.P.R. 170 (1962). Así también, hemos afirmado que el notario:

> Como principal custodio de la fe pública, base esencial del sistema del notariado, tiene el ineludible deber de ilustrar a los

otorgantes para lograr que éstos concurran al acto notarial en un estado de conciencia informada.  Es decir, tiene que cerciorarse de hacerle a las partes todas aquellas explicaciones, aclaraciones y advertencias necesarias para lograr el consentimiento informado de los otorgantes. (Citas omitidas).

In re Jiménez Brackel, supra.  Así, pues, en ausencia de un estudio del estado registral de la propiedad sobre la cual se otorga la escritura, el notario no podrá ejercer cabalmente su deber de información a los otorgantes "y habrá traicionado la fe de la que es principal guardador". In re Meléndez Pérez, 104 D.P.R. 770, 776-777 (1976).

De igual forma, este Tribunal ha determinado que la omisión de tomar las iniciales de los testigos en una escritura es una deficiencia grave, que puede causar la anulación del instrumento, que implica a su vez una violación a la fe pública notarial. In re: González Maldonado, res. el 20 de diciembre de 2000, 2000 TSPR 192, 2000 JTS 203.

No hay controversia en cuanto al hecho de que el Lcdo. Roberto Ortiz Gutiérrez no realizó un estudio de los antecedentes registrales de la propiedad antes de proceder a autorizar la escritura en cuestión. El querellado hizo constar en la escritura que las vendedoras "son dueñas en pleno dominio de la propiedad", lo cual resultó ser falso.  No hay duda de que el licenciado Ortiz Gutiérrez violó la fe pública notarial al dar fe de un hecho falso e incumplir con su deber de informar adecuadamente a los otorgantes. Además, el querellado admitió el hecho de que las iniciales del testigo instrumental no se encontraban originalmente en la escritura y que fueron puestas posteriormente durante el proceso de encuadernación.  Su violación a la fe notarial fue crasa y dio lugar a la presentación de una acción de nulidad de escritura y daños y perjuicios por parte de los compradores-querellantes y la correspondiente venta en pública subasta de la propiedad.

Tales actuaciones, en conjunto, son suficientes para disciplinar a Ortiz Gutiérrez por razón de su incumplimiento con los referidos deberes notariales. No obstante, en el presente caso existe otra situación aun más grave y peligrosa que amerita nuestra consideración.

II

Es un hecho no controvertido que existen dos (2) versiones diferentes de la escritura de compraventa que nos concierne aquí. Una de las versiones se encontraba en el protocolo del licenciado Ortiz Gutiérrez. La otra versión, copia certificada de la primera, estaba en poder de los compradores-querellantes. Según mencionamos previamente, de las determinaciones de hecho del Comisionado Especial surge que la copia certificada que tenían los compradores-querellantes les fue entregada por el propio querellado. Esta apreciación que hizo el Comisionado Especial sobre la base de la credibilidad de los distintos testimonios que tuvo ante sí, se apoya, además, en el hecho de que en nada se beneficiaban los compradores-querellantes con el cambio en las versiones porque bajo ninguna de ellas era inscribible su título en el Registro de la Propiedad.

Según lo determinó el Comisionado Especial en su informe, el querellado se desentendió de este asunto. No realizó gestión alguna para corregir el referido conflicto en las versiones de la escritura en cuestión, ni para aclarar el asunto.

Más aun, el licenciado Ortiz Gutiérrez tampoco ha ofrecido una explicación creída por el Comisionado Especial que aclare cómo es posible una cosa tan inaudita como que una copia certificada de una escritura provista por el notario y el original que se encontraba en su protocolo sean diferentes; tampoco lo entendemos nosotros. Lamentablemente, el Procurador General, **aunque solicitó al Comisionado Especial que determinara la comisión de fraude por parte del querellado**, no propició un procedimiento adecuado para ello, al no producir el testimonio de un perito calígrafo sobre el particular. Por su parte, el Comisionado Especial, aunque pudo nombrar tal perito, tampoco lo hizo. Por tal razón, estamos imposibilitados de determinar aquí si hubo fraude por parte del querellado que conllevaría su separación definitiva del ejercicio de la profesión. Ello, por ser la conducta constitutiva de fraude una de las más graves que puede cometer un notario. Además, actualmente no contamos con el beneficio del testimonio de varios de los otorgantes por razón de su muerte, lo cual hace nuestra tarea aun más difícil.

Lo anterior, no obstante, sí podemos decir que hay cambios importantes en las dos versiones de la escritura que el notario no ha podido explicar ni justificar, y que éste tampoco trató de corregir, todo lo cual, cuando menos,

refleja una falta de la debida diligencia ante una grave irregularidad, e intima una falta de control adecuado de la obra notarial del querellado imputable a éste.


                                    III

A la luz de las actuaciones impropias del licenciado Ortiz Gutiérrez examinadas en esta opinión llegamos a la conclusión de que está imposibilitado para ejercer la profesión de notario.

Por los fundamentos antes expuestos, se dictará sentencia para suspender indefinidamente al Lcdo. Roberto Ortiz Gutiérrez del ejercicio de la notaría en Puerto Rico.

Además, se remitirá al Secretario de Justicia el asunto de la posible comisión de fraude que el Procurador General le imputó al querellado con respecto a las dos versiones de la escritura de compraventa, para que éste determine lo que sea procedente.

Se dictará sentencia de conformidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

In re:

Roberto Ortiz Gutiérrez

CP-1998-7

SENTENCIA

San Juan, Puerto Rico, a 18 de enero de 2001.

Por los fundamentos expuestos en la Opinión Per Curiam que antecede, la cual se hace formar parte de la presente, se suspende indefinidamente al Lcdo. Roberto Ortiz Gutiérrez del ejercicio de la notaría en Puerto Rico.

Se le impone el deber de notificar a todos sus clientes de su presente inhabilidad de seguir representándolos, les devuelva cualesquiera honorarios recibidos por trabajos no realizados.

Además, deberá certificarnos en treinta (30) días del cumplimiento de estos deberes.

Además, se remitirá al Secretario de Justicia el asunto de la posible comisión de fraude que el Procurador General le imputó al querellado con respecto a las dos versiones de la escritura de compraventa, para que éste determine lo que sea procedente.

Finalmente, el Alguacil de este Tribunal deberá incautarse de la obra y sello notarial del

abogado suspendido de la notaría, debiendo entregar la misma a la Directora de la Oficina de Inspección de Notarías para la correspondiente investigación e informe.

Lo pronunció, manda el Tribunal y certifica la Secretaria del Tribunal Supremo.


Isabel Llompart Zeno
Secretaria del Tribunal Supremo