EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| In re:<br><br>        Efraín Aponte Berdecía | Querella<br><br>2004 TSPR 24<br><br>160 DPR ____ |

Número del Caso: CP-1998-5


Fecha: 22 de enero de 2004


Oficina del Procurador General:

                Lcda. Yvonne Casanova Pelosi
                Procuradora General Auxiliar


Abogado del Querellado:
                Lcdo. Elí B. Arroyo


Materia: Conducta Profesional
        (La suspensión del abogado advino final y firme el
        día 17 de febrero de 2004.)


Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

In re

Efraín Aponte Berdecía          CP-1998-5

PER CURIAM

San Juan, Puerto Rico, a 22 de enero 2004.

El 18 de noviembre de 1965, el Lcdo. Efraín Aponte Berdecía (en adelante, "Lcdo. Aponte Berdecía") fue admitido al ejercicio de la profesión de abogado y, el 3 de diciembre de 1965, le fue expedida la autorización para ejercer como notario.[1]

---

[1] Mediante Resolución de 5 de marzo de 2001, este Tribunal aprobó la solicitud de renuncia al ejercicio de la notaría que hiciera el Lcdo. Aponte Berdecía mediante carta de 12 de diciembre de 2000. Según lo expresado en dicha Resolución, la obra notarial de éste fue examinada, aprobada y entregada al Archivero General de Protocolos del Distrito Notarial de San Juan. No obstante, debemos advertir que ello no lo exime de cualquier responsabilidad que éste pudiera tener por haber incurrido en actuaciones contrarias a la Ley Notarial de Puerto Rico, 4 L.P.R.A. §§ 2001 *et seq.*, y a los Cánones del Código de Ética Profesional, 4 L.P.R.A. Ap. XX, en el descargo de sus funciones como notario.

El 5 de febrero de 1997, el Tribunal de Circuito de Apelaciones (en adelante, "TCA") nos remitió su sentencia, en el caso Autoridad de los Puertos v. Sucn. Luis Fojo Beltrán y otros v. Municipio de Arecibo, KLCE90-01006, con el fin de que tomáramos la acción correspondiente sobre una aparente violación a la Ley Notarial de Puerto Rico, 4 L.P.R.A.§§ 2001 et seq., por parte del Lcdo. Aponte Berdecía. Asimismo, nos remitió una copia de la Escritura Pública Número veinticuatro (24), sobre "Ratificación de Cesión de Derechos y Acciones" otorgada por el Lcdo. Aponte Berdecía el 21 de agosto de 1989.[2]

Mediante resolución de 7 de marzo de 1997, referimos el asunto a la atención del Procurador General de Puerto Rico y de la Oficina de Inspección de Notarías para investigación e informe.

Luego de varios incidentes procesales, el 7 de noviembre de 1997, la Oficina de Inspección de Notarías nos presentó su Informe en el cual concluyó que el Lcdo. Aponte Berdecía violó la fe pública notarial, así como los Cánones 18, 35 y 38 del Código de Ética Profesional, 4 L.P.R.A. Ap. XX, C.18, 35 y 38. Nos recomendó que el caso se refiriera al Procurador General para la presentación de una querella.

Por su parte, el 13 de noviembre de 1997, el Procurador General nos presentó su Informe, en el cual

---

[2] A través de ésta, el señor Luis Fojo Beltrán traspasó a su hijo, el señor Jorge Luis Fojo Mercado, un bien inmueble que le pertenecía a la Autoridad de los Puertos de Puerto Rico.

recomendó la imposición de una acción disciplinaria contra el Lcdo. Aponte Berdecía.

En razón de ello, mediante Resolución de 5 de diciembre de 1997, ordenamos al Procurador General que presentara la correspondiente querella. Conforme a lo ordenado, el 5 de marzo de 1998, dicho funcionario presentó ante este Tribunal una querella en contra del Lcdo. Aponte Berdecía imputándole los siguientes cargos:

**CARGO I**

El abogado Efraín Aponte Berdecía violó las disposiciones del Artículo 2 de la Ley Notarial de 1987, Ley Núm. 75 del 2 de julio de 1987, 4 L.P.R.A. 2002 las cuales obligan a todo notario a dar fe y autenticidad conforme a las leyes de los negocios jurídicos y demás actos y hechos extrajudiciales que ante él se realicen.

**CARGO II**

El abogado Efraín Aponte Berdecía violentó la disposición del Canon 18 de Ética Profesional el cual obliga a todo abogado a que en el descargue de su función, actúe con cuidado y diligencia.

**CARGO III**

El abogado Efraín Aponte Berdecía violentó las disposiciones del Canon 35 de Ética Profesional el cual obliga a todo abogado a ser sincero y honrado utilizando siempre medios consistentes con la verdad en su labor de redacción de instrumentos públicos y de documentos notariales.

Mediante una breve contestación de 21 de abril de 1998, el Lcdo. Aponte Berdecía negó los cargos imputados.

Así las cosas, el 22 de mayo de 1998, designamos al Lcdo. Enrique Rivera Santana, en calidad de Comisionado Especial, para que oyera y recibiera la prueba presentada por las partes, en apoyo de sus respectivas posiciones, y nos rindiera un informe con sus determinaciones de hechos. El Comisionado Especial encontró que el Lcdo. Aponte Berdecía había infringido las disposiciones de las Ley Notarial de Puerto Rico, *supra*, así como los Cánones 18 y 35 del Código de Ética Notarial, *supra*.

A continuación, exponemos un breve resumen de los hechos relevantes que motivaron la interposición de la presente querella.

## II

El 30 de junio de 1980, el señor Serafín Jiménez Mercado y su esposa, la señora María Díaz, suscribieron, reconocieron y ratificaron un contrato de compraventa mediante el cual vendieron al señor Luis Fojo Beltrán y a su esposa, la señora Carmen Mercado, una cafetería ubicada en el sector la Poza del Obispo en el Municipio de Arecibo. El contrato de compraventa fue reconocido ante el notario Sixto Román Alonso mediante el affidávit número 638 de 30 de junio de 1980.

En el mes de agosto de 1988, la Autoridad de los Puertos de Puerto Rico (en adelante, "Autoridad de los Puertos") ofreció al señor Fojo Beltrán una compensación por las mejoras hechas a la cafetería, la cual estaba ubicada en sus terrenos. El abogado del señor Fojo

Beltrán, el Lcdo. Aponte Berdecía, contestó que no conocía la razón por la cual se intervenía con su cliente, que no había nada por qué compensarle y negó que los terrenos perteneciesen a la Autoridad de los Puertos.

Así las cosas, el 29 de agosto de 1989, el Lcdo. Aponte Berdecía autorizó la escritura pública número veinticuatro (24), sobre "RATIFICACIÓN DE CESIÓN DE DERECHOS Y ACCIONES". En la referida escritura, comparecieron el señor Luis Fojo Beltrán y su esposa Carmen Mercado, como parte "cedente", y Luis Fojo Mercado y su esposa Luz Celeste Valentín, como parte "cesionaria". En el expositivo PRIMERO, de la parte dispositiva de dicha escritura, el Lcdo. Aponte Berdecía hizo constar que "la Parte Cedente es dueña del siguiente inmueble":[3]

> ---"Rural: **Parcela de terreno** localizada en el-Barrio Vigía de Arecibo, Puerto Rico, con una –Cabida superficial de cuatro cuerdas y ocho mil trescientos cuarenta diez milésimas de otra ---((4.8340 cdas.) equivalentes a diecinueve mil--novecientos noventa y nueve metros cuadrados y-quinientos cinco milésimas de otra -----------(19,995.505 m/c). En lides por el NORTE con la [fin página 1]
>
> [inicio página 2]
> OESTE, con terrenos de la International P.C.E. Inc."
>
> ---Enclava en dicha finca un edificio dedicado a comercio.-----------------------------------

---

[3] Esta es la descripción de la propiedad, según surge de la primera copia certificada de la escritura mencionada, y presentada en evidencia en el caso CS90-442 en el Tribunal Superior, Sala de Arecibo. Surge del Protocolo de 1989 del querellado, que la insuficiencia en la descripción de la finca fue corregida.

---No consta inscrito, por lo cual este documento no es inscribible ante el Registro de la Propiedad.--------------------------------

---Libre de cargas y gravámenes."--------------
[Corchetes añadidos]

Además, en el referido documento público, el Lcdo. Aponte Berdecía hizo constar que la parte cedente había adquirido el inmueble en controversia, a título de compraventa, mediante contrato privado de 22 de julio de 1978.[4] Asimismo, expresó que el contrato fue reconocido casi dos años más tarde (el 30 de junio de 1980), ante el notario Sixto Román Alonso mediante el affidávit número 638. **Ese affidávit, no obstante, solo da constancia de que la parte cedente había adquirido solamente la cafetería; no el terreno.**

Más adelante, en los expositivos TERCERO y CUARTO de la escritura, el Lcdo. Aponte Berdecía señaló que la parte cesionaria estuvo en posesión del "inmueble descrito en el párrafo primero" (solar y edificación) y que la "[p]arte Cedente le transfi[rió] el título de dicho inmueble sin reserva ni limitación de clase alguna para que lo posean, gocen y disfruten como sus únicos y legítimos dueños".

Por último, la cláusula final de la escritura incluía la dación de fe del notario Aponte Berdecía, la cual, según redactada, alcanzaría la totalidad del contenido del referido instrumento público.

---

[4] Según se desprende del Informe del Comisionado Especial, el contrato privado de 22 de junio de 1978 no fue presentado en evidencia.

Entre los hechos determinados por el Comisionado Especial, surge que al momento de otorgarse la escritura pública número veinticuatro (24), el Lcdo. Aponte Berdecía tuvo ante sí copia del affidávit número 638 que había sido reconocido ante el notario Sixto Román Alonso y un plano preparado por el ingeniero Miguel Roa que contenía la descripción de la finca. Como la parte cedente había adquirido el inmueble por contrato privado, el Lcdo. Aponte Berdecía asumió que éste no estaba inscrito en el Registro de la Propiedad, y así lo hizo constar en el documento.

El 5 de marzo de 1990, la Autoridad de los Puertos de Puerto Rico, alegando ser propietaria de los terrenos en los que estaba enclavada la aludida cafetería, instó un recurso de *Injunction*, el cual luego enmendó para aducir como causa de acción el desahucio en precario, en contra de los señores Luis Fojo Beltrán y Jorge Luis Fojo Mercado.[5] En el pleito incoado, ambos demandados fueron representados originalmente por el Lcdo. Aponte Berdecía, según surge de la contestación a la petición de *injunction*, y de la contestación a la demanda enmendada. De esta última, surge que el Lcdo. Aponte Berdecía negó que la Autoridad de los Puertos fuera la dueña de los terrenos y alegó como defensa afirmativa que la parte demandada había ocupado el "predio de terreno alrededor de veinte (20) años pública, pacíficamente y en calidad de dueños." No se hizo mención

---

[5] Caso Civil Núm: CPE 90-0441, Autoridad de los Puertos, Demandante vs. Luis Fojo Beltrán y Jorge Fojo Beltrán, Tribunal de Primera Instancia, Sala Superior de Arecibo.

en esta etapa a la escritura número veinticuatro (24) otorgada ante el querellado.

Al morir el señor Fojo Beltrán, se enmendó la demanda para incluir a los miembros de su sucesión. En la contestación a la demanda enmendada,[6] el 16 de julio de 1991, se trae al pleito como tercero demandado al Municipio de Arecibo. En esta ocasión, los demandados alegaron como defensa afirmativa que "adquirieron la parcela de terreno de 4.834 cuerdas a través de la [sic] escritura pública.." No aclararon cuál era la escritura pública, pero la cabida coincide con la que se hizo constar en la escritura número veinticuatro (24). El Comisionado Especial concluyó como un hecho que los allí demandados siempre reclamaron ser dueños de los terrenos y que el inmueble objeto de la escritura pública controvertida comprendía tanto el terreno como la estructura, contrario a la posición que asumió el querellado en la vista de este caso.[7] Por su parte, la

---

[6] En ésta, aparece todavía el Lcdo. Aponte Berdecía como abogado de los demandados.

[7] El querellado manifestó, en la vista celebrada ante el Comisionado Especial, que en el expositivo PRIMERO de la escritura número veinticuatro, al exponer "es dueña" del inmueble que allí se describe, se refería a la edificación; en cuanto a la página segunda, en el título al mencionar "dicha propiedad", las partes quisieron expresar "edificio dedicado a comercio". Las frases: "traspaso de la propiedad" y "título de dicho inmueble" están en idéntica situación. No obstante, del documento otorgado no surge que el título que se traspasó fuera únicamente la cafetería. De la escritura, surge que se utilizó el término de "inmueble" para describir el solar y la estructura. Además, el Lcdo. Aponte Berdecía representó tanto al señor Fojo Beltrán como al señor Fojo Mercado en

continúa...

Directora de la Oficina de Inspección de Notarías, concluyó en su Informe que el querellado trató de justificar la titularidad del cedente, tanto del inmueble (parcela de 4.8340 cuerdas), como de la estructura allí exigida dedicada a comercio.  Para tal fin, utilizó, el affidávit número 638, el cual no hace referencia alguna a dicha parcela.

El Tribunal de Primera Instancia, Sala Superior de Arecibo (en adelante, "TPI"), mediante sentencia parcial de 16 de junio de 1995, concluyó que los terrenos pertenecían a la Autoridad de los Puertos.  De ese dictamen no se recurrió a foro apelativo alguno.  Se recurrió posteriormente de otra sentencia parcial dictada en el mismo caso, mediante la cual el TPI reconocía que los demandados habían sido constructores de buena fe y ordenó que se le compensara lo edificado.  El foro apelativo intermedio revocó ese dictamen a través de la referida sentencia de 31 de enero de 1997.

En dicha sentencia, el TCA expresó que obraba en su expediente copia de la escritura pública número veinticuatro (24) de 21 de agosto de 1989 otorgada por el Lcdo. Efraín Aponte Berdecía, donde el señor Luis Fojo Beltrán traspasó a su hijo, el señor Jorge Luis Fojo

_____

...7 continuación

un litigio en el que se aseveró que estos ocupaban el terreno en calidad de dueños.  Véase Informe del Comisionado Especial, a la pág. 6.

Mercado, un bien inmueble que le pertenecía a la Autoridad de los Puertos.

El TCA nos envió esa sentencia junto con una copia de la referida escritura número veinticuatro (24) para que ejerciéramos nuestra jurisdicción disciplinaria ante una aparente violación a la Ley Notarial de Puerto Rico, *supra,* por parte del Lcdo. Aponte Berdecía.

## III

Con relación al primer cargo imputado, es menester señalar que los notarios, como únicos funcionarios capacitados para dar fe notarial, están obligados a cumplir a cabalidad con las disposiciones de la Ley Notarial de Puerto Rico, *supra,* los Cánones del Código de Ética Profesional y el contrato entre las partes. *Partido Acción Civil v. E.L.A.*, res. el 25 de febrero de 2000, 2000 T.S.P.R. 29; *In re Martínez, Odell I*, 148 D.P.R. 49 (1999); *In re Torres Olmeda*, 145 D.P.R. 384 (1998); *In re Sánchez Ruiz*, 105 D.P.R. 848 (1977).

El derecho notarial vigente recoge a través del Artículo 2 de la Ley Notarial, *supra*, lo siguiente:

> El notario **es el profesional del Derecho** que ejerce una **función pública**, **autorizado a dar fe y autenticidad conforme a las leyes de los negocios jurídicos** y demás actos y hechos extrajudiciales que ante él se realicen, sin perjuicio de lo dispuesto en las leyes especiales. Es su función de recibir e interpretar la voluntad de las partes, dándole forma legal, redactar las escrituras y documentos notariales a tal fin y conferirle[s] autoridad a los mismos. **La fe pública al notario es plena**

> **respecto a los hechos que, en el ejercicio de su función personalmente ejecute o compruebe** y también respecto a la forma, lugar, día y hora del otorgamiento.[8] (Énfasis suplido)

Un abogado viola la fe pública notarial al dar fe de hechos falsos y al incumplir con su deber de informar adecuadamente a los otorgantes de la necesidad de realizar un estudio de los antecedentes registrales de la propiedad antes de proceder a autorizar cualquier escritura de compraventa. *In re Ortiz Gutierrez* res. el 18 de enero de 2001, 153 D.P.R. ___ (2001); 2001 T.S.P.R. 22, 2001 J.T.S. 23.

El notario ejerce una función clave de inestimable importancia en los negocios jurídicos, toda vez que es custodio de la fe pública. Al autorizar un documento presuntivamente da fe pública y asegura que ese documento cumple con todas las formalidades de la Ley, formal y substantivamente, que el documento es legal y verdadero, y que se trata de una transacción válida y legítima. *In Re Feliciano Ruiz*, 117 D.P.R. 269 (1986); *Véase además*, *In re Vera Vélez*, 148 D.P.R. 1 (1999).

Reiteradamente hemos resuelto que "[l]a fe pública notarial, como elemento objetivo que se concretiza a través de la persona del notario con la presencia del compareciente, es la espina dorsal de todo el esquema de autenticidad documental. Cuando se quiebra, todo el sistema se afecta." *In re Feliciano Ruiz*, *supra*. *Véase*

---

[8] 4 L.P.R.A. sec. 2002.

*además*, *In re Median Lugo*, 136 D.P.R. 120 (1994); *In re Vargas Hernández*, 135 D.P.R. 603 (1994); *In re Rodríguez Gerena I*, 132 D.P.R. 693 (1993); *In re González González*, 119 D.P.R. 496 (1987).

Faltar a la verdad en los hechos es, por tanto, una de las faltas más graves que como custodio de la fe pública puede cometer un notario. *In re Vargas Hernández*, *supra*; *In re Landing y Aulet*, 107 D.P.R. 103 (1978).

En el caso de autos, no existe la menor duda de que el Lcdo. Aponte Berdecía violó la fe pública notarial. De los hechos surge que el querellado conocía, o debió conocer, el estado registral del inmueble objeto de la escritura, pues éste había actuado como representante legal del señor Fojo Beltrán ante los requerimientos realizados por la Autoridad de los Puertos para compensarle por la estructura erigida en un terreno de su propiedad. Además, para acreditar la titularidad del inmueble utilizó únicamente un affidávit y, para identificar los contornos de la propiedad, un plano de mensura. Basarse como el querellado ha admitido, en un plano de mensura, que solo describe el inmueble, es totalmente inapropiado para conocer la titularidad de un inmueble.

Al así hacerlo, dio fe pública notarial a una escritura pública que no cumplía en modo alguno con los requisitos de ley que confieren validez al negocio jurídico en ella expresado. La parte "cedente" **no** tenía título para transmitir el dominio del inmueble descrito en la

escritura. Además, el modo mediante el cual los "cedentes" justificaron su titularidad **no** constituía un documento público. Como se sabe, un affidávit no es inscribible en el Registro de la Propiedad ni concede título de propiedad. El affidávit utilizado por el querellado solo hacía mención a la estructura de la cafetería y no al inmueble en sí como se consignó en la escritura.

Asimismo, el inmueble no estaba inscrito en el Registro de la Propiedad, lo que significaba que la escritura otorgada **no** era inscribible por sí sola. Tal dato debió conocerse de una simple investigación de los antecedentes registrales del inmueble. El Lcdo. Aponte Berdecía expresó que no hizo estudio de título ni gestión alguna para verificar el estado registral de la finca porque "no lo creyó necesario" y no estaba "obligado" a ir al Registro.[9] Como mencionáramos anteriormente, en reiteradas ocasiones hemos puntualizado el importante deber de todo abogado de informar a sus clientes, al momento de otorgar una escritura pública, de la imperiosa necesidad de llevar a cabo una investigación de los antecedentes registrales del inmueble que es objeto del negocio jurídico. *In re López Maldonado*, 130 D.P.R. 863 (1992); *In re Ramos Meléndez y Cabiya Ortiz*, 120 D.P.R. 796 (1988); *Chévere v. Cátala*, 155 D.P.R. 432 (1984). Sin embargo, el Lcdo. Aponte Berdecía incumplió con tan significativo deber.

---

[9] Informe del Comisionado Especial, a la pág. 7.

Por tales razones, resolvemos que el Lcdo. Aponte Berdecía infringió el Artículo 2 de la Ley Notarial de Puerto Rico, *supra*.

IV

Con relación al segundo cargo imputado, sobre una posible violación al Canon 18 del Código de Ética Profesional, *supra*, debemos mencionar que todo abogado-notario deberá ser especialmente puntual y diligente en el cumplimiento de sus obligaciones, voluntariamente asumidas, como depositario de la fe pública. Además, **todo notario tiene el deber ineludible de cumplir con las disposiciones éticas contenidas en el Canon 18 del Código de Ética Profesional, 4 L.P.R.A. Ap. IX, C.18, relativas a la competencia del abogado y consejo al cliente.**[10]

En pronunciamientos anteriores relativos al canon 18, *supra*, hemos enfatizado en que "[e]l ejercicio de la práctica de la profesión de abogado, requiere en todo momento celo, cuidado y prudencia." *In re Rodríguez Torres*, 104 D.P.R. 748, 765 (1976); *Véase además*, *In re Martínez*

---

[10] El Canon 18 dispone, en lo pertinente, que:

> Este deber de desempeñarse en forma capaz y diligente [el deber de competencia, diligencia y consejo al cliente] no significa que el abogado pueda realizar cualquier acto que sea conveniente con el propósito de salir triunfante en las causas del cliente. **La misión del abogado no le permite que en defensa del cliente viole las leyes del país o cometa algún engaño**. Por consiguiente, al sostener las causas del cliente, debe actuar dentro de los límites de la ley, teniendo en cuenta no sólo la letra de ésta, sino el espíritu y los propósitos que la informan....

*Ramírez*, 142 D.P.R. 329 (1997); *In re Siverio Orta*, 117 D.P.R. 14, 18 (1986). Por ello, "[l]a sociedad debe tener en cada Notario una garantía de certeza y limpieza en los actos y contratos cuya autenticación se encomienda...". *In re Hernández Rivera*, 104 D.P.R. 770, 776 (1976).

Sin duda alguna, en la situación que se nos presenta, el Lcdo. Aponte Berdecía infringió el Canon 18 del Código de Ética Profesional, *supra,* al violar las disposiciones de la Ley Notarial, *supra*. **Una vez un notario contraviene la ley vigente, está incurriendo en una práctica notarial indeseable y contraviene el canon mencionado**. *In re Rivera Arvelo*, 132 D.P.R. 840 (1993).

Asimismo, con sus actuaciones, el Lcdo. Aponte Berdecía no mostró la honradez ni la mínima capacidad necesaria para defender adecuadamente los intereses de su cliente, desempeñando con tal proceder una labor claramente incompetente.

V

Para finalizar, en cuanto al tercer cargo imputado, cuando un notario viola la fe pública notarial al no exponer la veracidad de unos hechos,[11] automáticamente incumple con las disposiciones del Canon 35 del Código de Ética Profesional, *supra*, que impone a los abogados el deber de "ajustarse a la sinceridad de los hechos [...] al

---

[11] "Es precisamente esa condición de certeza y confianza en sus actuaciones lo que brinda eficacia y garantía al documento notarial. Por eso, es imprescindible que el notario observe la mayor pureza y honor en el descargo de la fe pública notarial". *In re Ramos*, 104 D.P.R. 568 (1976).

redactar un affidávit u otros documentos." *Véase In re Peña Clos*, 135 D.P.R. 590 (1994); *In Re Flores Torres*, 119 D.P.R. 578 (1987); *In re Landing y Aulet*, 107 D.P.R. 103 (1978).

Como hemos intimado en las secciones precedentes, el notario es un profesional del Derecho que ejerce una función pública para robustecer, con una presunción de verdad, los actos en que interviene, para colaborar en la formación correcta del negocio jurídico y para solemnizar y dar forma legal a los negocios jurídicos privados. *In re Torres Olmeda*, *supra*, a la pág. 392.

De igual forma, habrá de tener conciencia de que en el ejercicio de la abogacía y de la notaría la verdad es el único camino y que el complejo sistema de justicia va siempre orientado a su propósito central de que en los casos aflore la verdad para así colocar al juzgador en posición de hacer justicia. Sarah Torres Peralta, El Derecho Notarial Puertorriqueño, edición especial, San Juan, First Book Publishing of P.R., 1995, sec. 4.90.

Ciertamente, en el caso de marras, el Lcdo. Aponte Berdecía no se ajustó a la verdad, y sinceridad que le requiere la ética profesional, cuando al describir la propiedad inmueble objeto de transferencia en el instrumento público que autorizó, consignó que el cedente era dueño del inmueble, lo cual incluía el solar y no solamente la edificación, con previo conocimiento de que no lo era. Por tanto, somos del criterio que el Lcdo. Aponte

Berdecía no actuó conforme a lo preceptuado por el Canon 35 del Código de Ética Profesional, *supra.*

VI

En atención a lo previamente expuesto, y por considerar que la grave actuación del querellado violentó el Artículo 2 de la Ley Notarial de Puerto Rico, *supra*, así como los Cánones 18 y 35 del Código de Ética Profesional, *supra*, menoscabando la confianza pública en él depositada, se dictará sentencia ordenando su **suspensión por tres (3) meses de la práctica de la abogacía** y lo apercibimos de que en el futuro deberá cumplir a cabalidad con los principios y postulados de nuestro ordenamiento jurídico, o, de lo contrario, se le impondrán sanciones disciplinarias más severas. Asimismo, le imponemos el deber de notificar a todos sus clientes de su presente inhabilidad de continuar representándolos, les devuelva cualesquiera honorarios recibidos por trabajos no realizados, e informe oportunamente de su suspensión a los distintos foros judiciales y administrativos del país. Deberá, además, certificarnos dentro del término de treinta (30) días, a partir de su notificación, el cumplimiento de estos deberes, notificando también al Procurador General.

Se dictará sentencia de conformidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

In re

Efraín Aponte Berdecía              CP-1998-5

SENTENCIA

San Juan, Puerto Rico, a 22 de enero de 2004.

Por los fundamentos expuestos en la Opinión Per Curiam que antecede, la cual se hace formar parte íntegra de la presente, se dicta Sentencia ordenando la **suspensión por tres (3) meses del Lcdo. Efraín Aponte Berdecía de la práctica de la abogacía** y lo apercibimos de que en el futuro deberá cumplir a cabalidad con los principios y postulados de nuestro ordenamiento jurídico, o, de lo contrario, se le impondrán sanciones disciplinarias más severas. Asimismo, le imponemos el deber de notificar a todos sus clientes de su presente inhabilidad de continuar representándolos, les devuelva cualesquiera honorarios recibidos por trabajos no realizados, e informe oportunamente de su suspensión a los distintos foros judiciales y administrativos del país. Deberá, además, certificarnos dentro del término de treinta (30) días, a partir de su notificación, el cumplimiento de estos deberes, notificando también al Procurador General.

Lo pronunció, manda el Tribunal y certifica la Secretaria del Tribunal Supremo. El Juez Asociado señor Rivera Pérez está inhibido.

Patricia Otón Olivieri
Secretaria del Tribunal Supremo