per curiam:
Los esposos Luis A. Rodríguez Pérez y Zayra Morales Estrada presentaron ante la Oficina del Procura- *46 dor General una queja contra el Ledo. Osvaldo Ortiz Medina, por éste haber autenticado sus firmas en un contrato de compraventa en violación del Art. 56 de la Ley Notarial de Puerto Rico, 4 L.P.R.A. see. 2091. A raíz de dicha queja, el Procurador General nos remitió un Informe Preliminar con sus hallazgos sobre el proceder del licenciado Ortiz Medina. En atención al informe, ordenamos la presenta-ción de la querella de autos. Posteriormente, designamos al Ledo. Carlos de Jesús Rivera Marrero como Comisio-nado Especial, con la encomienda de recibir la prueba y someternos una recomendación al respecto.
Tras examinar su informe, así como los argumentos es-bozados por el licenciado Ortiz Medina en cuanto a la que-rella, lo censuramos enérgicamente por su inobservancia de las normas que gobiernan el ejercicio de la notaría en nues-tra jurisdicción.
I
Los hechos que narraremos surgen del Informe del Co-misionado Especial, así como de los documentos que obran en autos.
El licenciado Ortiz Medina fue admitido al ejercicio de la abogacía el 26 de junio de 1987 y prestó juramento como notario el 2 de octubre de ese mismo año. Precisamente, en el ejercicio de su función notarial, el 21 de marzo de 2003 éste legitimó mediante un testimonio de autenticidad las firmas de un contrato de compraventa suscrito por los es-posos Rodríguez-Morales y Monte Cario Development Corp.
En particular, el referido contrato tenía como objeto un lote que era parte de una finca propiedad de Monte Cario Development Corp., ubicada en el municipio de Cabo Rojo. Según los términos del convenio, dicha finca había sido dividida en unos diez solares que, al momento de su firma, aún estaban pendientes de segregación. En lo pertinente a *47 la querella ante nuestra consideración, el contrato de com-praventa señalaba que los esposos Rodríguez-Morales pa-garon $25,000 a cambio del “Lote Núm. 7” de la finca alu-dida, con una cabida aproximada de 984.16m2. Sin embargo, la entrega de ese lote estaría sujeta a la aproba-ción de la segregación por parte de la Administración de Reglamentos y Permisos (ARPe), así como a la instalación por Monte Cario Development Corp. de toda la infraestruc-tura relativa a los servicios de agua potable, electricidad y caminos de acceso.
En este sentido, Monte Cario Development Corp. tenía un año, a partir de la firma del contrato de compraventa, para cumplir con ambas condiciones. Si se obtenía la apro-bación de ARPe dentro de dicho término, Monte Cario Development Corp. otorgaría la escritura pública correspon-diente y entregaría el lote objeto del contrato. De no realizarse tal gestión en el término convenido, las partes podían prorrogarlo u optar por resolverlo, en cuyo caso Monte Carlo Development Corp. devolvería la totalidad del dinero recibido a cambio del mencionado lote.(1)
Así las cosas, al concluir el plazo para segregar el lote en cuestión e instalar la infraestructura mencionada, Monte Cario Development Corp. aún no había cumplido con las condiciones antes reseñadas. Por ello, los esposos Rodrí-guez-Morales solicitaron la resolución del contrato y la de-volución del dinero que pagaron por el solar. Sin embargo, como inicialmente sus gestiones a esos efectos no dieron resultado, tras obtener asesoramiento sobre la validez de dicho contrato, éstos acudieron ante la Oficina del Procu-rador General y presentaron una queja contra el licenciado Ortiz Medina.
*48 A petición del Procurador General, el licenciado Ortiz Medina contestó los señalamientos de los esposos Rodrí-guez-Morales y adujo que no participó en la redacción del contrato de compraventa referido ni intervino en la nego-ciación de las partes. Además, alegó que como no era oficial ni accionista de la corporación vendedora, entendía que no había incurrido en violación ética alguna. Del mismo modo, señaló que las partes tenían conocimiento pleno del nego-cio que llevarían a cabo y que aceptaron el contrato según éste fue redactado. Por último, expresó que estaba gestio-nando la devolución de los $25,000 que Monte Cario Development Corp. le había cobrado a los esposos Rodríguez-Morales.
El Procurador General nos presentó oportunamente un Informe Preliminar sobre el asunto y, tras concederle un término para ello, el licenciado Ortiz Medina se expresó. En su comparecencia aceptó haber autorizado un testimo-nio de autenticidad en el contrato de compraventa antes reseñado, pero reiteró que no había actuado indebida-mente. Además, reconoció que durante la firma del con-trato tanto él como las partes enfatizaron que el aspecto económico del negocio era atractivo y que, por ende, éste sería beneficioso para los esposos Rodríguez-Morales. No obstante, señaló que al tener conocimiento sobre el incum-plimiento de Monte Cario Development Corp. con las con-diciones estipuladas en el citado contrato, procedió a ges-tionar personalmente la devolución de los $25,000 cobrados por dicha empresa, así como el pago de $500 por los gastos en que incurrieron los esposos Rodríguez-Morales.
Tras considerar detenidamente el asunto, le ordenamos al Procurador General que presentara esta querella. En ella se le imputa al licenciado Ortiz Medina una violación al Canon 18 del Código de Ética Profesional, 4 L.P.R.A. Ap. IX, al autorizar un testimonio de autenticidad en un con-trato de compraventa en contravención del Art. 56 de la *49 Ley Notarial de Puerto Rico, supra, así como de la Regla 68 del Reglamento Notarial de Puerto Rico, 4 L.P.R.A. Ap. XXIV. En síntesis, ambas disposiciones prohíben que los notarios legitimen firmas en contratos como el de autos.
Por su parte, en su contestación a dicha querella, el li-cenciado Ortiz Medina argumenta que la controversia en torno al procedimiento disciplinario de autos se circuns-cribe a determinar si el contrato antes citado era real-mente una compraventa perfecta. En este sentido, Ortiz Medina señala que como el acuerdo estaba sujeto a una condición suspensiva —la segregación del lote y la instala-ción de la infraestructura correspondiente— en ausencia de su cumplimiento la compraventa carecía de eficacia. Por ello, aduce que su intervención en el contrato aludido no violentó el Art. 56 de la Ley Notarial de Puerto Rico, supra, pues mediante dicha transacción no se llegó a transmitir un derecho real sobre un bien inmueble.
Examinamos la presente querella en conformidad con las determinaciones de hecho del Comisionado Especial, en el ejercicio de nuestra inherente facultad disciplinaria.
II
 A. Como se sabe, el Canon 18 del Código de Ética Profesional, supra, requiere que los abogados se abstengan de asumir la representación legal de cualquier cliente cuando sean conscientes de no poder realizar urna labor idó-nea y competente, o de no poder prepararse adecuadamente para defender las causas de éste sin aumentar irrazonable-mente sus gastos o los del sistema de justicia. Así pues, todo abogado debe defender los intereses de sus clientes con la mayor diligencia, demostrando en cada una de sus interven-ciones su más profundo saber y habilidad. En todo momento debe satisfacer —y esforzarse por exceder— aquella medida que la profesión jurídica estime como la más adecuada y responsable. La indiferencia, desidia, despreocupación, in- *50 acción y displicencia no son las cualidades que deben encar-nar a un abogado admitido por este Tribunal a la práctica del Derecho. E.g. In re León Malavé, 172 D.P.R. 1036 (2008).
Ahora bien, el deber de competencia y diligencia que les impone el citado canon a los abogados toma un matiz distinto cuando éstos ejercen la función notarial. Como hemos aclarado en múltiples ocasiones, el abogado representa los intereses de su cliente; el notario, en cam-bio, no tiene cliente alguno. Más bien, el notario es el profesional del Derecho que ejerce una función pública, autorizado por la ley para dar fe y autenticidad a los negocios jurídicos y demás actos o hechos extrajudiciales que se realicen ante él. Art. 2 de la Ley Notarial de Puerto Rico, 4 L.P.R.A. see. 2002. Véase, además, In re Raya, 117 D.P.R. 797, 802-803 (1986).
La responsabilidad del notario en cuanto a ese deber es aún mayor, pues en la función que desempeña, el valor de la voluntad informada de los comparecientes es, en definitiva, la base sobre la cual descansa la fe pública notarial. En la medida en que el notario no se oriente sobre las normas relativas al negocio que deseen realizar las partes contratantes, el consentimiento prestado por éstas será el fruto de la ignorancia o de la falta de claridad. Como consecuencia de ello, el documento público que autorice carecerá de eficacia jurídica alguna. Véase In re Meléndez Pérez, 104 D.P.R. 770, 775-776 (1976). En suma, un notario que desconoce las normas jurídicas relativas, no sólo al ejercicio de su profesión, sino a las relaciones y los intereses de los ciudadanos que recurren ante él, realmente vulnera la naturaleza misma del notariado en nuestra jurisdicción.
En esta ocasión, nos corresponde determinar si la actua-ción del licenciado Ortiz Medina al autorizar un testimonio de autenticidad al pie de un documento titulado “contrato de compraventa”, es ejemplo de la habilidad requerida a *51 los notarios como profesionales del Derecho y custodios de la fe pública. Veamos.
B. El Art. 56 de la Ley Notarial de Puerto Rico, supra, autoriza que los notarios den testimonio, a petición de una parte interesada, de la autenticidad de un documento no matriz; es decir, de aquel documento que no forma parte del Protocolo de instrumentos públicos. Además de dar fe sobre la fecha en la cual se autorizó el referido testimonio, el notario puede dar fe de la legitimación de las firmas que aparezcan en el documento. De esta manera, se acredita que las personas firmantes lo suscribieron en presencia del notario y que, a su vez, éste las conoce personalmente o, en su defecto, las identificó mediante los medios supletorios que provee la ley. Véanse, además: Regla 67 del Reglamento Notarial de Puerto Rico, 4 L.P.R.A. Ap. XXIV; S. Torres Peralta, El Derecho Notarial Puertorriqueño, San Juan, Publicaciones STP, 1995, pág. 15.11.
En Puerto Rico, la reglamentación del testimonio de autenticidad sustituyó en gran medida la anterior normativa sobre los llamados affidávit, provenientes del Derecho anglosajón. Los testimonios, arraigados en la tradición notarial latina, no son documentos notariales de segunda categoría, sino que poseen su propia importancia en el tráfico jurídico cotidiano según los efectos particulares que se les adscriban. Así, por ejemplo, el testimonio de legitimación de firmas tiene el efecto de disipar las dudas sobre la autenticidad de la firma de un documento determinado; o sea, si la firma es de la persona a quien se le atribuye. P. Avila Alvarez, Estudios de Derecho Notarial, 4ta ed., Madrid, Ed. Montecorvo, 1973, págs. 283 y 287-288.
Ahora bien, precisamente en función de esos efectos, el alcance de la facultad legitimadora del notario no se extiende a los negocios que, según el Art. 1232 del Código Civil de Puerto Rico, 31 L.P.R.A. see. 3453, deben constar en un documento público. Entre ellos se encuentran, en *52 particular, los actos y contratos que tengan por objeto la creación, transmisión, modificación o extinción de derechos reales sobre bienes inmuebles. 31 L.P.R.A. see. 3453(1). Así pues, en términos expresos, la Ley Notarial de Puerto Rico establece que no se podrá autorizar un testimonio de au-tenticidad en tales contratos.
En esencia, el fundamento para dicha prohibición ra-dica en que, de ordinario, el notario no asume la responsa-bilidad por el contenido de los documentos privados cuyas firmas legitime. Art. 56 de la Ley Notarial de Puerto Rico, supra. Cf. In re Colón Ramery, 138 D.P.R. 793, 799 (1995).(2) Por tal razón, la autorización de un testimonio de autenticidad en los casos antes mencionados tendría el re-sultado de frustrar el objetivo del Código Civil al requerir, a instancias de cualquier parte contratante, la preparación de una escritura pública en tales circunstancias: garanti-zar que, al prestar su consentimiento a un contrato sobre bienes inmuebles, los otorgantes conozcan plenamente las consecuencias del negocio que pretenden llevar a cabo. Más aún, es sólo de esta manera que el contrato puede servir como título inscribible en el Registro de la Propiedad. Véanse: Arts. 38, 42 y 43 de la Ley Hipotecaria y del Registro de la Propiedad, 30 L.P.R.A. sees. 2201, 2205 y 2206.
En fin, no tendría sentido emplear la función notarial para darle autenticidad y eficacia a un mero documento privado cuando la tarea primordial del notario consiste en autorizar, como un instrumento público, el negocio plasmado en el documento. Es preciso advertir, además, que la referida prohibición también responde al hecho de que los negocios sobre bienes inmuebles están sujetos al pago de aranceles. Por ende, para evitar que el notario se convierta en cómplice de una posible evasión contributiva, la Ley No *53 tarial de Puerto Rico establece que, si ha de intervenir en un contrato de tal naturaleza, sólo podrá hacerlo mediante la autorización de un documento público. Véanse, en general: 4 L.P.R.A. secs. 851-858; In re Feliciano, 115 D.P.R. 172 (1984); Lázaro v. Sucn. Toro Cabañas, 53 D.P.R. 201 (1938); E. Giménez Arnau, Derecho Notarial, Pamplona, Ed. Univ. de Navarra, 1976, págs. 801-806.
Por último, la Ley Notarial de Puerto Rico prohíbe específicamente que se autoricen testimonios de autenticidad en contratos con los cuales se pretenda adjudicar o vender, ya sea expresa o implícitamente, una participación concreta en un bien inmueble cuya segregación no haya sido aprobada con anterioridad por las agencias correspondientes. De hecho, aun en el caso de que la referida venta se haga mediante una escritura pública, el Art. 15(g) de la Ley Notarial de Puerto Rico exige que el notario advierta a los contratantes que, tras la celebración de dicha compraventa, éstos pasarán a formar parte de una comunidad de bienes como propietarios de una porción abstracta e indefinida del inmueble objeto del negocio. Además, debe advertirles que no podrán segregar, identificar, lotificar o marcar su participación sobre el bien sin obtener previamente la autorización de las agencias concernidas. (3) *54 4 L.P.R.A. secs. 2033(g) y 2091. Véanse, además: In re Molina Fragosa, 166 D.P.R. 567 (2005); In re Aponte Berdecía, 161 D.P.R. 94 (2004).
l — l HH H-1
En este caso, a pesar de las prohibiciones antes reseña-das, el licenciado Ortiz Medina acepta que autorizó un tes-timonio de autenticidad al pie del “contrato de compraven-ta” que describimos anteriormente. No obstante, aduce que en virtud de lo resuelto en Meléndez v. Jiménez Realty, Inc., 98 D.P.R. 892 (1970), dicho contrato carecía de efica-cia, pues nunca se cumplió con la condición suspensiva de la cual dependía la entrega del lote que se le vendió a los esposos Rodríguez-Morales. Por eso señala que no pudo ha-ber violado las prohibiciones de la Ley Notarial de Puerto Rico, ya que nunca intervino realmente en un contrato de compraventa de un bien inmueble.
Ciertamente, en el citado caso Meléndez v. Jiménez Realty, Inc., supra, págs. 896-899, resolvimos que un con-trato en el cual se pactó la compraventa de unas parcelas de terreno pendientes de segregación, pero cuya eficacia se sujetó a la aprobación final de las agencias gubernamenta-les correspondientes, no era un pacto nulo ni contrario a la ley o al orden público. Sin embargo, nuestras expresiones en ese sentido nunca estuvieron dirigidas a validar la in-tervención notarial en ese tipo de contratos ni, mucho me-nos, a liberar al notario de su responsabilidad disciplinaria si se prueba que contravino las prohibiciones ya mencionadas.
Como ya hemos señalado, la Ley Notarial de Puerto Rico prohíbe expresamente que los notarios legitimen las firmas de los otorgantes de contratos como el presente. Aun si la intención de los esposos RodríguezMorales y Monte Carlo Development Corp. fue suscribir un contrato de compraventa, sujeto a la condición suspensiva *55 de obtener la segregación del lote vendido, este acuerdo era una compraventa en todo el sentido de la palabra. Además, el hecho de que la compraventa dependiera de una condi-ción suspensiva no significa que la intervención del licen-ciado Ortiz Medina fuera correcta. Como se puede apreciar del texto claro del Art. 56 de la Ley Notarial de Puerto Rico, supra, las prohibiciones que éste contiene no distin-guen entre las compraventas perfectas y aquellas que, por unas circunstancias determinadas, no cobran vigencia hasta que llegue un plazo o se cumpla una condición en particular.
En el caso de autos, la cláusula tercera del contrato fir-mado por los esposos Rodríguez-Morales y Monte Cario Development Corp. no deja margen a dudas en cuanto al tipo de negocio realizado por ambos. En dicha cláusula se expresa claramente que las partes acordaron celebrar un contrato de compraventa sobre el “Lote Núm. 7” de la finca propiedad de Monte Carlo Development Corp. Además, se señala que los esposos Rodríguez-Morales entregaron, al momento de firmar el contrato, $25,000 como pago total por el referido solar. Sin embargo, como aún no se había obtenido la segregación del lote ni se había construido la infraestructura necesaria para su disfrute, el cumpli-miento de la prestación correspondiente a Monte Cario Development Corp. —la entrega del solar— se sujetó a la con-dición de que ARPe aprobara la segregación.
Aunque ciertamente ello afectó la exigibilidad de la obli-gación objeto del contrato, creemos que luego de obtenida la segregación no habría quedado nada más que negociar, pues ya las partes se habían puesto de acuerdo en cuanto al precio y a la cosa objeto del contrato. Véase Soto v. Rivera, 144 D.P.R. 500 (1997). Por consiguiente, no cabe duda de que el convenio aludido era realmente una compraventa y que, dado esto, la actuación del licenciado Ortiz Medina al legitimar las firmas estampadas en el convenio infringió la prohibición contenida en el Art. 56 de la Ley Notarial de *56 Puerto Rico, supra. Su proceder constituye un claro ejem-plo de su falta de pericia en el ejercicio de la función notarial.
En atención a lo anterior, concluimos que el licenciado Ortiz Medina violó el Canon 18 del Código de Ética Profe-sional, supra. Dado que éste realizó varias gestiones diri-gidas a obtener el reembolso del dinero cobrado por Monte Cario Development Corp. a los esposos Rodríguez-Morales, y en vista de que es la primera vez que le imponemos san-ciones disciplinarias, lo censuramos enérgicamente por no observar las normas que gobiernan el ejercicio de la nota-ría en nuestra jurisdicción. Lo apercibimos, además, de que en el futuro deberá dar fiel cumplimiento a dichas nor-mas, pues de no hacerlo se enfrentaría a sanciones disci-plinarias más severas.
> I — I
Por los fundamentos antes expuestos, se censura enér-gicamente al licenciado Ortiz Medina por su desatención a las normas que regulan la notaría en esta jurisdicción y se le apercibe que en el futuro deberá dar fiel cumplimiento a dichas normas ya que, de no hacerlo, se enfrentaría a san-ciones disciplinarias más severas.

Se dictará Sentencia de conformidad.

La Juez Asociada Señora Rodríguez Rodríguez concu-rrió con el resultado sin opinión escrita.

 En el contrato aludido, las partes también hicieron constar que la finca matriz de la cual se habría de segregar el “Lote Núm. 7” estaba afecta a una hipoteca de $15,000, la cual se cancelaría al momento de firmarse la escritura correspondiente. Por otra parte, los esposos Rodríguez-Morales se comprometieron a aceptar las condiciones restrictivas que se habrían de fijar en cuanto al uso del “Lote Núm. 7” como, por ejemplo, la prohibición de la instalación de verjas de tipo eslabonado.

 Ahora bien, si el notario es consciente de la nulidad o falsedad del docu-mento, podría enfrentar sanciones disciplinarias. Véanse, e.g.: In re Criado Vázquez, 155 D.P.R. 436 (2001); In re Caratini Alvarado, 153 D.P.R. 575 (2001).

 Aparte de las razones antes señaladas, esta prohibición surgió a raíz de la práctica de vender ‘lotes” o “solares” en fincas rústicas sin que las agencias urbanís-ticas —como la Administración de Reglamentos y Permisos (ARPe) o la Junta de Planificación (JP)— aprobaran el desarrollo. A través de dicha modalidad, populari-zada en Puerto Rico durante los años setenta y ochenta, se inducía a los compradores a pensar que adquirían un título sobre un lote concreto, cuando en realidad lo que compraban era una participación en común pro indiviso de la finca matriz. Véase Exposición de Motivos de la Ley Núm. 194 de 7 de agosto de 1998 (1998 (Parte 1) Leyes de Puerto Rico 806-808).
En muchos casos, la compraventa se plasmaba en una escritura pública. En otros, sin embargo, ésta se realizaba a través de un documento privado con la legi-timación de las firmas mediante un testimonio de autenticidad. Cuando los compra-dores acudían al Registro de la Propiedad para inscribir su derecho, se topaban con la realidad de que su título no era inscribible, pues no se había obtenido la segrega-ción del lote en cuestión, o aun cuando se obtuviera posteriormente, no se había consignado la transacción en una escritura pública. Véase íd., págs. 807-808.